**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>YALE UNIVERSITY,<br><br>Defendants. | Civil Action No. 3:20-cv-01534-CSH |

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO INTERVENE**

Christopher F. Droney (ct00020)
Erick M. Sandler (ct25029)
Sara J. van Vliet (ct30690)
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT  06103
Telephone: (860) 275-0100
Fax: (860) 967-0793
cdroney@daypitney.com
emsandler@daypitney.com
svanvliet@daypitney.com

Neal Kumar Katyal (*pro hac vice*)
Peter S. Spivack (*pro hac vice*)
Michael J. Zubrow (*pro hac vice*)
Jo-Ann Tamila Sagar* (*pro hac vice*)
Sundeep Iyer (*pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004
(202) 637-5600
neal.katyal@hoganlovells.com
peter.spivack@hoganlovells.com
michael.zubrow@hoganlovells.com
jo-ann.sagar@hoganlovells.com
sundeep.iyer@hoganlovells.com

*\* Admitted only in New York; supervised by firm members in the District of Columbia.*

*Counsel for Defendant Yale University*

ORAL ARGUMENT REQUESTED

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ............................................................................................................1

ARGUMENT ...................................................................................................................3

I.    SFFA IS NOT ENTITLED TO INTERVENE AS OF RIGHT...........................................3

    A.    The Government Will Adequately Protect SFFA's Interests ..................................3

    B.    If This Court Permits SFFA To Participate As An Amicus, SFFA Would Not Be Harmed By An Adverse Decision In This Case ...........................10

II.    THIS COURT SHOULD DENY SFFA PERMISSIVE INTERVENTION ....................11

CONCLUSION................................................................................................................18

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

CASES:

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
    250 F.3d 171 (2d Cir. 2001)................................................................4, 6

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*,
    843 F.3d 48 (2d Cir. 2016)...............................................................9

*City of Chicago v. Fed. Emergency Mgmt. Agency*,
    660 F.3d 980 (7th Cir. 2011) ..........................................................14

*FTC v. First Capital Consumer Membership Servs., Inc.*,
    206 F.R.D. 358 (W.D.N.Y. 2001)......................................................5

*H.L. Hayden Co. of New York v. Siemens Med. Sys., Inc.*,
    797 F.2d 85 (2d Cir. 1986)...............................................................16

*In re Leslie Fay Cos.*,
    222 B.R. 718 (S.D.N.Y. 1998).........................................................7

*In re Toor*,
    No. 16-CV-1773 (JCH), 2017 WL 1712511 (D. Conn. May 1, 2017) ....................................7

*Jansson v. Stamford Health, Inc.*,
    No. 3:16-cv-260, 2018 WL 1756595 (D. Conn. Apr. 11, 2018) ............................1

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
    315 F.R.D. 169 (S.D.N.Y. 2016) ......................................................13

*Laroe Estates, Inc. v. Town of Chester*,
    828 F.3d 60 (2d Cir. 2016)...............................................................14

*Little Rock Sch. Dist. v. N. Little Rock Sch. Dist.*,
    378 F.3d 774 (8th Cir. 2004) ...........................................................10

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)........................................................................8, 14

*Madsen v. Women's Health Ctr., Inc.*,
    512 U.S. 753 (1994)........................................................................9

*Mass. School of Law at Andover, Inc. v. United States*,
    118 F.3d 776 (D.C. Cir. 1997) .........................................................13, 17

**TABLE OF AUTHORITIES—Continued**

**Page(s)**

*Nat. Res. Def. Council, Inc. v. New York State Dep't of Envtl. Conservation*,
    834 F.2d 60 (2d Cir. 1987)..............................................................................4

*SEC v. Bear, Stearns & Co.*,
    No. 03-Civ.2937-WHP, 2003 WL 22000340 (S.D.N.Y. Aug. 25, 2003)...............................5

*SEC v. TLC Invs. & Trade Co.*,
    147 F. Supp. 2d 1031 (C.D. Cal. 2001) ..................................................................13

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    261 F. Supp. 3d 99 (D. Mass. 2017) .......................................................................15

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    308 F.R.D. 39 (D. Mass.), *aff'd*, 807 F.3d 472 (1st Cir. 2015) ...........................2, 13

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    346 F. Supp. 3d 174 (D. Mass. 2018) ....................................................................15

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    397 F. Supp. 3d 126 (D. Mass. 2019) ....................................................................15

*Students for Fair Admissions Inc. v. Univ. of N. Carolina*,
    319 F.R.D. 490 (M.D.N.C. 2017) .......................................................................2, 14

*Students for Fair Admissions, Inc. v. Univ. of N. Carolina*,
    No. 1:14CV954, 2018 WL 4688388 (M.D.N.C. Sept. 29, 2018) ...........................15

*Students for Fair Admissions, Inc. v. Univ. of N. Carolina*,
    No. 1:14CV954, 2019 WL 4773908 (M.D.N.C. Sept. 30, 2019) ...........................15

*Town of Chester v. Laroe Estates, Inc.*,
    137 S. Ct. 1645 (2017).................................................................................8, 14

*Trs. of Nat'l Ret. Fund v. Fireservice Mgmt. LLC*,
    384 F. Supp. 3d 412 (S.D.N.Y. 2019)....................................................................12

*United States v. City of New York*,
    198 F.3d 360 (2d Cir. 1999)......................................................................... *passim*

*United States v. Hooker Chems. & Plastics Corp.*,
    749 F.2d 968 (2d Cir. 1984)...........................................................................4, 11

*United States v. Metro. St. Louis Sewer Dist.*,
    569 F.3d 829 (8th Cir. 2009) ..............................................................................14

**TABLE OF AUTHORITIES—Continued**

**Page(s)**

*United States v. New York City Hous. Auth.*,
    326 F.R.D. 411 (S.D.N.Y. 2018) .............................................................5

*United States v. Philip Morris USA Inc.*,
    566 F.3d 1095 (D.C. Cir. 2009) ............................................................14

*Warth v. Seldin*,
    422 U.S. 490 (1975) ...............................................................................8

*Washington Elec. Coop., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*,
    922 F.2d 92 (2d Cir. 1990)..........................................................4, 6, 8, 9

**RULES:**

Fed. R. Civ. P. 24(a)(2)...............................................................................3, 10

Fed. R. Civ. P. 24(b)(3)....................................................................................11

Fed. R. Civ. P. 26(b)(1)....................................................................................11

**OTHER AUTHORITIES:**

6 James Wm. Moore et al., *Moore's Federal Practice* § 24.03 (3d ed. 2020) .....................5, 6, 11

6 James Wm. Moore et al., *Moore's Federal Practice* § 24.10 (3d ed. 2020) ......................11, 16

7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1909 (3d ed. 2020 update)..............................................................5

*Transfer Eligibility and Academic Guidelines*, Yale Univ.,
    https://admissions.yale.edu/transfer-details (last visited Nov. 17, 2020) .................................9

## INTRODUCTION

Students for Fair Admissions (SFFA) seeks leave to join this lawsuit as a Plaintiff-Intervenor and to file a complaint copied almost word-for-word from the Government's filing. SFFA alleges—just as the Government does—that Defendant Yale University's undergraduate admissions program violates Title VI of the Civil Rights Act of 1964.  SFFA's request to intervene, however, is all but foreclosed by precedent.  As a matter of law, it is the rare case where a court permits a private party to intervene on the same side as the Government.  And even if the Government were not a party in this case, it is rarer still for a court to permit a third party to intervene after the Defendant has already produced many thousands of documents at the Plaintiff's request over the course of several years, as Yale did in response to the Government's pre-lawsuit investigation of Yale's admissions program.  The bar for mandatory or permissive intervention in these circumstances is high, and SFFA does not clear it.  This Court should deny SFFA's motion.

With respect to mandatory intervention, SFFA's request should be denied for two independent reasons.  *First*, the Government will adequately protect SFFA's interests.  SFFA's putative complaint is nearly identical to the Government's.  Even if the United States formulates its "particular litigation strategy" slightly differently than SFFA prefers, those kinds of minor differences do not warrant SFFA's intervention.  *United States v. City of New York*, 198 F.3d 360, 367 (2d Cir. 1999).  *Second*, SFFA can participate in these proceedings as an amicus, which will allow it to present its arguments on the merits of this case to this Court and will thereby mitigate any harm to its interests.  *See, e.g.*, *Jansson v. Stamford Health, Inc.*, No. 3:16-cv-260, 2018 WL 1756595, at *4 (D. Conn. Apr. 11, 2018) (Haight, J.) (granting application of amicus curiae to file memorandum in pending litigation).  Indeed, that is what happened with the parties who were denied intervention in a similar case challenging Harvard University's admissions program.

With respect to permissive intervention, the reasons to deny the motion are every bit as strong.  Allowing SFFA into this dispute will complicate and unduly delay these proceedings and open the floodgates for a wide array of potential intervenors.  For the past two years, Yale has acted in good faith and has given the Government extensive access to its records and personnel. Yale voluntarily provided the Government with over 14,000 documents and reams of data related to its admissions process, and it made Yale employees available for interviews.  If SFFA intervenes now, it may need to start discovery from scratch, delaying the ultimate resolution of this litigation. SFFA's presence would also raise novel legal and factual questions at every stage of this litigation, particularly as to whether SFFA possesses Article III standing.

Opposing intervention in these circumstances isn't just Yale's position; it's also SFFA's consistent position.  Or at least it was.  When SFFA sued Harvard University, current and prospective Harvard students sought to intervene.  SFFA opposed intervention because it argued that intervention would unnecessarily complicate and unduly delay the lawsuit.  The district court agreed, denying the motion and allowing the intervenors to participate as amicus curiae.  *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 308 F.R.D. 39, 52 (D. Mass.), *aff'd*, 807 F.3d 472 (1st Cir. 2015).  Similarly, when SFFA sued the University of North Carolina (UNC), SFFA again opposed intervention by third parties.  The court there permitted limited intervention, but based only on unique "factual circumstances"—namely, the intervenors' request only for "limited participation" in the case—that are not present in this case.  *Students for Fair Admissions Inc. v. Univ. of N. Carolina*, 319 F.R.D. 490, 496 (M.D.N.C. 2017).

This Court should follow SFFA's own consistent position and the numerous decisions within and outside this Circuit rejecting intervention in similar circumstances.  It should deny SFFA's motion, and permit SFFA to present its views as amicus curiae instead.

## ARGUMENT

**I.      SFFA IS NOT ENTITLED TO INTERVENE AS OF RIGHT.**

This Court should not permit SFFA to intervene as of right and file a complaint that is nearly identical to the Government's.  To intervene as of right under Rule 24(a), SFFA must show that (i) it "claims an interest relating to" this dispute; (ii) it "is so situated that disposing of the action may as a practical matter impair or impede" its "ability to protect its interest"; and (iii) the "existing parties" in the lawsuit do not "adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).  SFFA falls well short of fulfilling the criteria for mandatory intervention.  It is the exceptional case in which a private party may intervene on the Government's side—and this case is not that exception.  SFFA's request for intervention as of right fails for two independent reasons. *First*, the Government will adequately protect SFFA's interests in this case.  Far from being misaligned, the United States and SFFA possess identical interests.  And SFFA's complaint reproduces the Government's complaint verbatim, save for some slight differences in the introductory language.  *Second*, SFFA's interests will not be impaired if it is not permitted to intervene, as SFFA can present its legal arguments to this Court as amicus curiae.

### A.      The Government Will Adequately Protect SFFA's Interests.

SFFA possesses identical interests to the United States, and there is no indication that the Government will not adequately protect those interests by vigorously litigating this dispute.  This Court should not take the extraordinary step of permitting a private party to intervene on the Government's side with little more than a copied-and-pasted complaint.

1. SFFA faces an uphill battle to prove that the United States will not protect its interests. To show that the "existing parties" do not "adequately represent" the intervenor's interest, *id.*, the intervenor must show that the existing party lacks "sufficient motivation to litigate vigorously and

to present all colorable contentions," *see Nat. Res. Def. Council, Inc. v. New York State Dep't of Envtl. Conservation*, 834 F.2d 60, 62 (2d Cir. 1987). Mere differences in motive are not enough: "[A] putative intervenor's interest is not inadequately represented merely because its motive to litigate is different from that of a party to the action." *Washington Elec. Coop., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 98 (2d Cir. 1990) (citing *Nat. Res. Def. Council*, 834 F.2d at 61-62). Instead, "the nature of those [different] interests" must be "related to colorable legal [arguments]" that the existing party "would be less able to assert" than the putative intervenor. *Nat. Res. Def. Council*, 834 F.2d at 62. And when the "putative intervenor and a named party have the same ultimate objective," an even "more rigorous showing of inadequacy" is required. *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001). Critically, "[r]epresentation is not inadequate simply because" the putative intervenor would "press for more drastic relief," or because the putative intervenor and the existing party "have different views on the facts, the applicable law, or the likelihood of success of a particular litigation strategy." *City of New York*, 198 F.3d at 367 (internal quotation marks omitted).

As relevant here, the inquiry into whether an existing party adequately represents the putative intervenor's interests is even more demanding if the existing party is the Government. When the Government brings a case, the intervening private party "must make a particularly strong showing" that the Government will not protect its interests. *Id.*; *see United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 985 (2d Cir. 1984) (Friendly, J.) ("a greater showing that representation is inadequate should be required" when the Government enforces the public interest); Pl.'s Mem. in Opp'n to Mot. to Intervene at 11, *Students for Fair Admissions Inc. v. Univ. of N. Carolina*, No. 1:14-cv-954 (M.D.N.C. July 21, 2015), ECF No. 50 ("SFFA UNC Opp.")

("[W]here the party who shares the intervenor's objective is a government agency, the intervenor has the burden of making a strong showing of inadequacy." (internal quotation marks omitted)).

It is thus the "rare" case where "a member of the public" can "intervene" when the United States "represents the public interest."  7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1909 (3d ed. 2020 update).  This commonsense rule is necessary for government to function.  Otherwise, "individual citizens could usually or always intervene and assert individual points of view."  6 James Wm. Moore et al., *Moore's Federal Practice* § 24.03[4][a][v][A] (3d ed. 2020).

For this reason, courts in this Circuit routinely conclude that the Government will adequately protect a putative intervenor's interests, and so have regularly denied intervention in those circumstances.  *See, e.g.*, *United States v. New York City Hous. Auth.*, 326 F.R.D. 411, 417-418 (S.D.N.Y. 2018) (denying intervention as of right and permitting narrowly circumscribed permissive intervention); *SEC v. Bear, Stearns & Co.*, No. 03-Civ.2937-WHP, 2003 WL 22000340, at *3 (S.D.N.Y. Aug. 25, 2003) ("Reflexive intervention by the public in SEC actions would undermine both the SEC's ability to resolve cases by consent decree and the efficient management of those cases by courts."); *FTC v. First Capital Consumer Membership Servs., Inc.*, 206 F.R.D. 358, 364 (W.D.N.Y. 2001) ("[T]he governmental entity deserves special consideration and deference as an adequate representative of the interests of would-be intervenors.").

2. SFFA falls well short of meeting its burden to "make a particularly strong showing" that the Government will not protect SFFA's nearly identical interests and litigate the case vigorously in service of those interests.  *City of New York*, 198 F.3d at 367.

In this case, SFFA's interests are not different from the Government's.  In its motion to intervene, SFFA states that one of its members "applied for and was denied admission to Yale's

2020 entering class." Mem. of Law in Supp. of Mot. to Intervene at 4, ECF No. 5-1. According to SFFA, that member "is ready and able to apply to transfer to Yale." *Id.* To "protect the rights" of that single individual, SFFA seeks to press the argument that "Yale's admissions policies and procedures violate Title VI." *Id.* at 3. That means the only "legally protectable" interest SFFA asserts is the same as the Government's: enforcing Title VI. *City of New York*, 198 F.3d at 365.

The Government will adequately advance this Title VI claim. Here, not only is the Government's "ultimate objective" the same as SFFA's, but the parties' filings are also functionally identical. *Butler, Fitzgerald & Potter*, 250 F.3d at 179. Aside from adding some irrelevant allegations about Yale's admissions policy in the 1920s, SFFA's proposed complaint reproduces the United States' factual allegations verbatim. *See* SFFA Compl. ¶¶ 12-30, ECF No. 5-2. Both SFFA's and the United States' complaints also ask for the same relief: a permanent injunction preventing Yale from considering race altogether in its admissions process. *Compare* SFFA Compl. at 38, *with* United States Compl. at 31, ECF No. 1. The Government clearly seeks the "same ultimate objective." *Butler, Fitzgerald & Potter*, 250 F.3d at 179.

SFFA also does not even attempt to make the "particularly strong showing," *City of New York*, 198 F.3d at 367, that the United States will not litigate the case "vigorously," *Washington Elec. Coop.*, 922 F.2d at 98. The Government typically litigates cases "vigorously." *See* 6 *Moore's Federal Practice*, *supra*, § 24.03[4][a][v][A] ("[A] governmental entity is presumed to represent its citizens adequately."). And it has litigated this case "vigorously" so far. In October, the Department of Justice moved aggressively, suddenly ending its investigation of Yale and filing this lawsuit, even though Yale was cooperating with the ongoing investigation and was still in the midst of producing years of admissions data. It denied Yale a meaningful opportunity to dispute the findings of its investigation and rushed to court to obtain an injunction barring Yale from

considering race in undergraduate admissions.  In short, the Government's filings to date do not indicate that it has failed to litigate this case vigorously.  This Court should not presume otherwise in the absence of record evidence showing as much.  And here, SFFA has supplied none.[1]

3. The differences SFFA identifies between its interests and the Government's fall well short of the "particularly strong showing" a putative intervenor must make when it seeks to intervene on the side of the Government.  *City of New York*, 198 F.3d at 367.  At most, SFFA alleges minor differences in the "relief" sought, or "different views" on "the applicable law" or "the likelihood of success of a particular litigation strategy."  *Id.* (internal quotation marks omitted).  Case law makes clear that those differences do not warrant intervention.  *Id.*

*First*, SFFA asserts that, "unlike the United States, SFFA seeks a broader injunction prohibiting Yale from *ever* using race as a factor in admissions decisions."  Mem. of Law in Supp. of Mot. to Intervene at 6.  But the Second Circuit has made clear that the Government's "[r]epresentation" of a putative intervenor's interests is not somehow "inadequate" just because the putative intervenor "press[es] for more drastic relief" than the Government.  *City of New York*, 198 F.3d at 367 (internal quotation marks omitted).  The touchstone of the inadequacy inquiry is

---

[1] Despite filing its motion in the lead-up to the presidential election, SFFA did not argue that a change in presidential administration might cause the Government to alter its position or terminate this lawsuit.  This Court therefore should not consider this speculative possibility here.  *See In re Toor*, No. 16-CV-1773 (JCH), 2017 WL 1712511, at *2 (D. Conn. May 1, 2017) ("The court will not consider these issues because [the party] made nary an argument on the topics in his opening brief, and therefore waived the issues entirely." (internal quotation marks and brackets omitted)); *In re Leslie Fay Cos.*, 222 B.R. 718, 721 n.3 (S.D.N.Y. 1998) (similar).  And that speculative possibility does not support SFFA's intervention request in any event.  The Government remains in the best position to determine its interests in the litigation, and the Court should not assume that the Government's interests in the suit will change unless and until the Government indicates as much.  Indeed, even though the Government decided not to oppose SFFA's motion, it has not indicated that its interests may change, or that its interests diverge from those of SFFA.  *See* ECF No. 8.  Moreover, even if the Government ultimately decided to change position and drop this lawsuit in a new presidential administration, SFFA could seek to refile its Complaint in a new case.  Intervention therefore is not necessary to hedge against the highly speculative possibility that the Government might not protect SFFA's interests at some point in the future.

instead whether the Government will vigorously litigate this case.  *See id.*; *Washington Elec. Coop.*, 922 F.2d at 98.  And here, everything indicates that the Government will.

In any event, it is not the case that SFFA seeks broader relief than the Government.  The United States' complaint, like SFFA's, explicitly requests "[a] permanent injunction prohibiting Yale from using race as a factor in future Yale College admissions decisions."  United States Compl. at 31.  So there is no meaningful difference in the relief they seek.

Moreover, SFFA's argument that it seeks broader relief than the Government fails for another reason:  SFFA lacks Article III standing to seek broader relief.  "[A]n intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing."  *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017).  When an association like SFFA sues to represent its members, the association must show (among other things) that one of its members suffered the kind of legally cognizable "injury" that "would make out a justiciable case had the members themselves brought suit."  *Warth v. Seldin*, 422 U.S. 490, 511 (1975).  That means an SFFA member must have (1) suffered a concrete and particularized "injury in fact"; (2) "traceable" to the defendant"; and (3) capable of redress "by a favorable decision."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-561 (1992) (internal quotation marks and brackets omitted).

Here, SFFA identifies only a single member who applied for admission to Yale's entering class for Fall 2020 and professes a desire "to apply to transfer to Yale" if SFFA prevails.  Mem. of Law in Supp. of Mot. to Intervene at 4; Declaration of Edward J. Blum, ¶ 7, ECF No. 5-3.  That transfer applicant will be eligible to reapply to Yale for a short period of time—after the applicant completes "one year's worth of transferable postsecondary credit," but before that applicant completes "two years" at his or her current institution.  *Transfer Eligibility and Academic*

*Guidelines*, Yale Univ., https://admissions.yale.edu/transfer-details (last visited Nov. 17, 2020). That means SFFA can request injunctive relief only for the limited time period in which the applicant could reapply and an injunction would remedy the alleged injury. *See Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*, 843 F.3d 48, 72 (2d Cir. 2016) ("[I]njunctive relief should be no broader than necessary to cure the effects of the harm caused by the violation." (internal quotation marks omitted)); *see also Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." (internal quotation marks omitted)).  And because SFFA does not represent a class of all future applicants, allowing the organization to seek broader relief would permit SFFA to escape Article III's requirement that litigants only pursue the remedy necessary to cure their particularized harms.  Thus, even assuming that SFFA seeks broader relief than the Government, it does not have standing to pursue that relief.

*Second*, SFFA argues that it might possess ever-so-slightly different motives than the Government.  *See* Mem. of Law in Supp. of Mot. to Intervene at 6.  SFFA claims that it seeks to protect individual rights under Title VI, whereas the Government seeks to ensure that Yale spends public money in accordance with Title VI.  *Id.*  But "a putative intervenor's interest is not inadequately represented merely because its motive to litigate is different from that of a party to the action." *Washington Elec. Coop.*, 922 F.2d at 98.  Here, the United States claims to be seeking compliance with Title VI, and it has no shortage of resources to prosecute its case.  SFFA's interests will be fully protected.  SFFA therefore lacks a bona fide reason to intervene as of right.

Indeed, this Court need look no farther than SFFA's own position in the Harvard and UNC cases.  When SFFA opposed intervention by prospective and current students in those cases, it acknowledged that the proposed intervenors "might offer additional arguments."  Pl.'s Mem. in

Opp'n to Mot. to Intervene at 6, *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, No. 1:14-cv-14176-ADB (D. Mass. May 13, 2015), ECF No. 37 ("SFFA Harvard Opp.") (internal quotation marks omitted); SFFA UNC Opp. at 9-10. But, as SFFA correctly recognized, additional arguments do not constitute a basis for intervention when parties share the same "ultimate objective." SFFA Harvard Opp. at 6 (citing *Little Rock Sch. Dist. v. N. Little Rock Sch. Dist.*, 378 F.3d 774, 780 (8th Cir. 2004) ("It is not sufficient that the party seeking intervention merely disagrees with the litigation strategy or objectives of the party representing its interests.")); SFFA UNC Opp. at 10 (same). The exact same logic controls here. SFFA possesses the same ultimate objective as the Government in this particular case. For all the reasons SFFA previously opposed intervention as of right in those other cases, SFFA should not be allowed to intervene as of right here.

> **B.     If This Court Permits SFFA To Participate As An Amicus, SFFA Would Not Be Harmed By An Adverse Decision In This Case.**

This Court should deny SFFA's request to intervene as of right for a second, independent reason: SFFA cannot show that the outcome of this dispute "may as a practical matter impair or impede" SFFA's "ability to protect its interest." Fed. R. Civ. P. 24(a)(2).

SFFA argues only that a decision in Yale's favor "could form precedent" supporting Yale's admissions policies and thus make it more difficult for SFFA to challenge those policies in the future. Mem. of Law in Supp. of Mot. to Intervene at 5. That's often true with any major litigation. That argument, if accepted, would therefore provide a blank check for intervention in almost any case that "could form precedent." *Id.* Moreover, as the Second Circuit has explained, this Court can eliminate that risk by allowing SFFA to participate as an amicus. *Hooker Chems. & Plastics Corp.*, 749 F.2d at 992-993 (Friendly, J.) (affirming denial of intervention where the proposed intervenor could present arguments as an amicus); 6 *Moore's Federal Practice*, *supra*,

§ 24.03[3][b] ("Stare decisis effects are insufficient to establish impairment if participation as an amicus curiae would suffice.").  As an amicus, SFFA could submit legal arguments and provide any other necessary context it believes this Court needs to decide this case.  If SFFA participates in that capacity, the outcome of this case would not "impair or impede" SFFA's interest.

The bottom line:  SFFA has not satisfied the requisite criteria for intervention as of right.  SFFA's request for intervention as of right should be denied.

## II.   THIS COURT SHOULD DENY SFFA PERMISSIVE INTERVENTION.

This Court should also deny SFFA's request for permissive intervention.  Just as with mandatory intervention, when a private party seeks to intervene on the same side as the Government, the court "ordinarily will not grant permissive intervention."  6 *Moore's Federal Practice*, *supra*, § 24.10[2][c].  This Court should not deviate from that principle here.

In determining whether to grant a request for permissive intervention, this Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  Here, SFFA's presence as an intervenor would lengthen discovery, which as a practical matter has been ongoing since the Department of Justice began its investigation in 2018.  It could also lead to collateral litigation over the scope of SFFA's discovery rights:  Because SFFA has identified only a single member who was denied admission to Yale's entering class of Fall 2020 and who intends to apply as a transfer student, its rights to discovery would not be coextensive with the Government's.  SFFA's presence as an intervenor also would inject novel legal issues and practical complexities into this lawsuit.  These complexities counsel strongly in favor of denying intervention and permitting SFFA and any other interested parties to participate as amici instead.  That result would ensure this dispute's speedy adjudication.  And it would prevent this high-profile case from becoming a magnet for any interested party on either

side of this case to intervene and slow down the proceedings.  This was the same approach SFFA suggested in the Harvard and UNC cases.  This Court should follow that approach here.

For at least five reasons, this Court should deny permissive intervention.

*First*, SFFA's intervention would extend discovery and unduly delay this case.  The Department of Justice opened its Title VI investigation into Yale's undergraduate admissions program in 2018.  From the start, Yale cooperated with the investigation, and voluntarily provided the Government with extensive access to its records.  Yale has already given the Government over 14,000 pages of documents, three years of applicant data, and more than one hundred complete application files based on the Government's sample criteria.  Additionally, Yale employees have sat for four interviews, and Yale has responded to the Government's questions with more than 50 pages of detailed, written answers.  Although the Government may conduct discovery within the limits set forth by the Federal Rules of Civil Procedure, the Government will not start from square one.  It already has a wealth of information at its disposal.

By contrast, Yale has not produced any of this information to SFFA.  Injecting SFFA into this dispute at this point therefore could substantially delay the lawsuit's resolution.  Courts routinely prohibit third parties from intervening when intervention would extend discovery.  *See, e.g.*, *Trs. of Nat'l Ret. Fund v. Fireservice Mgmt. LLC*, 384 F. Supp. 3d 412, 420 (S.D.N.Y. 2019) (denying permissive intervention where parties would need to reopen discovery); *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 315 F.R.D. 169, 173 (S.D.N.Y. 2016) (same); *SEC v. TLC Invs. & Trade Co.*, 147 F. Supp. 2d 1031, 1043 (C.D. Cal. 2001) (denying intervention where proposed intervenors would have needed "to do additional discovery").  The same logic applies here.  Because the Government has already received voluminous information regarding Yale's undergraduate admissions program, adding SFFA to this lawsuit as an intervenor could

significantly extend and delay the timeline for discovery.  Moreover, SFFA's intervention could lead to collateral litigation between the parties over the scope of discovery.  After all, the Government's rights to discovery are likely to be different than the rights of SFFA, which has identified only a single member who was denied admission to Yale and who allegedly intends to apply to Yale as a transfer student.  *See* Fed. R. Civ. P. 26(b)(1).

Indeed, when SFFA sued Harvard and UNC, SFFA opposed the intervention of current and prospective students in both cases on the ground that it would delay discovery.  *See* SFFA Harvard Opp. at 8-9 (opposing delay of "at least two months"); SFFA UNC Opp. at 14 (opposing delay of "at least several months").  And in both cases SFFA warned that "'piling on parties' can 'result in delay as parties and court expend resources trying to overcome the centrifugal forces springing from intervention, and prejudice will take the form not only of the extra cost but also of an increased risk of error.'"  SFFA Harvard Opp. at 7 (quoting *Mass. School of Law at Andover, Inc. v. United States*, 118 F.3d 776, 782 (D.C. Cir. 1997)); SFFA UNC Opp. at 10 (same).

In the Harvard case, the district court agreed with SFFA's objection and denied intervention.  *See Students for Fair Admissions*, 308 F.R.D. at 52 ("In all likelihood, allowing fourteen Students to intervene as parties would further complicate proceedings, lengthen the discovery process, add expense, and significantly delay the ultimate resolution of this case.").  In the UNC case, the district court permitted the students "limited intervention," but only because, among other things, they sought targeted discovery—limited only to "declarations and expert testimony, rather than depositions and written discovery"—on two narrowly defined issues in the case.  *Students for Fair Admissions Inc.*, 319 F.R.D. at 495.  The unusual circumstances that led the UNC district court to grant intervention do not exist here:  SFFA does not claim that its

participation will be limited in any way, or that it seeks only limited discovery.  The Harvard and

UNC decisions therefore suggest that SFFA should not be allowed to permissively intervene here.

*Second*, permitting SFFA to intervene would also inject novel legal questions regarding

Article III standing into this dispute.  To the extent that SFFA claims to seek broader relief than

the Government, SFFA must prove that it has Article III standing to pursue that relief, *Town of

Chester*, 137 S. Ct. at 1651, "with the manner and degree of evidence required at the successive

stages of the litigation," *Lujan*, 504 U.S at 561.  And although it remains an open question in this

Circuit, other Circuits have held that SFFA must establish its standing to intervene and to remain

in this action even if SFFA requests the same relief as the Government.  *See United States v. Philip

Morris USA Inc.*, 566 F.3d 1095, 1145 (D.C. Cir. 2009) (per curiam); *City of Chicago v. Fed.

Emergency Mgmt. Agency*, 660 F.3d 980, 984 (7th Cir. 2011) (intervenors must have standing);

*United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 833 (8th Cir. 2009) ("[A] party seeking

to intervene must establish Article III standing in addition to the requirements of Rule 24."); *see

also Laroe Estates, Inc. v. Town of Chester*, 828 F.3d 60, 64-65 (2d Cir. 2016) (recognizing circuit

split on the question whether "a party seeking to intervene . . . must independently have standing"),

*vacated and remanded sub nom. Town of Chester*, 137 S. Ct. 1645.

At this stage, SFFA identifies one member who allegedly applied for admission to enter

Yale in 2020, was denied admission, and stands ready to transfer.  Mem. of Law in Supp. of Mot.

to Intervene at 4.  But that member could cease to belong to SFFA at any time.  And once that

individual completes two years of college elsewhere, he or she will become ineligible to transfer

to Yale.  If and when either contingency occurs, SFFA will lack standing to intervene.

Thus, if SFFA were permitted to intervene, this Court and the parties would likely need to

address questions of standing and mootness at each stage of the litigation.  Indeed, in the Harvard

14

and UNC cases, the parties addressed SFFA's standing at every stage.  *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 261 F. Supp. 3d 99 (D. Mass. 2017) (motion to dismiss); *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 346 F. Supp. 3d 174, 190-191 (D. Mass. 2018) (summary judgment); *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 397 F. Supp. 3d 126, 183-184 (D. Mass. 2019) (trial); *Students for Fair Admissions, Inc. v. Univ. of N. Carolina*, No. 1:14CV954, 2018 WL 4688388, at *2-6 (M.D.N.C. Sept. 29, 2018) (motion to dismiss); *Students for Fair Admissions, Inc. v. Univ. of N. Carolina*, No. 1:14CV954, 2019 WL 4773908, at *5 n.9 (M.D.N.C. Sept. 30, 2019) (summary judgment); *see also* Defs.' Mot. to Dismiss, in Part, for Lack of Subject Matter Jurisdiction and for Failure to State a Claim at 2 n.1, *Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*, No. 1:20-cv-00763-RP (W.D. Tex. Oct. 16, 2020), ECF No. 10 (indicating that University of Texas defendants intend to move to dismiss SFFA's lawsuit for lack of standing). Rather than reproduce that complexity here, this Court should deny permissive intervention, and permit SFFA to participate as amicus instead.

*Third*, this Court should deny permissive intervention because the Government will vigorously protect SFFA's interests.  *See supra* pp. 5-7.  Just as the adequacy of representation by existing parties determines whether a party can intervene as of right, that factor is also relevant in determining whether permissive intervention is appropriate.  *See H.L. Hayden Co. of New York v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986).  As is true of mandatory intervention, "[i]f one of the existing parties is the government and that party is aggressively representing the interests of the proposed intervenor, the court ordinarily will not grant permissive intervention."  6 *Moore's Federal Practice*, *supra*, § 24.10[2][c].  Moreover, the limited "nature and extent of the intervenor['s] interests" further militate against intervention here.  *H.L. Hayden Co.*, 797 F.2d at

89 (internal quotation marks omitted). SFFA represents a single individual who previously applied to Yale and who may reapply as a transfer student. *See supra* pp. 5-6. The Government will vigorously litigate this case and, in doing so, will be able to protect the interests of that lone member. *See supra* pp. 6-7. SFFA's intervention is thus unwarranted.

*Fourth*, SFFA is not entitled to intervention based on its assertion that it will "file its own separate lawsuit against Yale" if its motion is not granted, thereby "creating additional litigation and burdens for all parties and this Court." Mem. of Law in Supp. of Mot. to Intervene at 8. SFFA brought its first Title VI complaint against Harvard in 2014. SFFA had years to bring a similar lawsuit against Yale. And even when it moved to intervene in this suit, it largely copied the Government's complaint. This belated and cursory effort suggests that SFFA hopes to ride the Government's coattails. It does not suggest that SFFA intends to bring its own, separate lawsuit.

*Finally*, this Court should deny SFFA's request because granting permissive intervention may encourage other parties who claim an interest in the case to seek intervention. This is a highly visible lawsuit, and one in which many organizations on both sides of the core legal issue are likely to have an interest. If the Court grants intervention here, that may open the door for other interested parties to seek intervention on similar grounds. This risks creating the same problems SFFA warned against in the Harvard and UNC lawsuits: "piling on parties," adding "extra cost," and increasing the "risk of error.'" SFFA Harvard Opp. 7 (quoting *Mass. School of Law at Andover*, 118 F.3d at 782); SFFA UNC Opp. 10 (same).

In short, there are strong reasons for this Court to deny permissive intervention. Granting intervention would risk substantially delaying the resolution of the lawsuit, would inject novel legal issues and additional, unnecessary complexity into the case, and would risk opening the door to additional interested parties who seek intervention. And any purported harms to SFFA can be

ameliorated by following what SFFA itself has previously called the "fairest and most efficient path forward": allowing SFFA "to participate as amicus."  SFFA Harvard Opp. at 9; SFFA UNC Opp. at 14, 16.  That path makes good sense where, as here, the Government "will adequately protect any conceivable interest" SFFA has.  SFFA Harvard Opp. at 9; SFFA UNC Opp. at 15.  To the extent that SFFA wants to formulate arguments that differ slightly from the arguments the Government raises in its briefs, "[t]hat is precisely the kind of 'perspective' that can be shared through an amicus brief."  SFFA Harvard Opp. at 10; *see* SFFA UNC Opp. at 16-17.  SFFA need not intervene to make its arguments.  Its motion should be denied.

## CONCLUSION

For these reasons, this Court should deny SFFA's motion to intervene.

Respectfully Submitted,

/s/ Neal Kumar Katyal
Neal Kumar Katyal (*pro hac vice*)
Peter S. Spivack (*pro hac vice*)
Michael J. Zubrow (*pro hac vice*)
Jo-Ann Tamila Sagar* (*pro hac vice*)
Sundeep Iyer (*pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004
(202) 637-5600
neal.katyal@hoganlovells.com
peter.spivack@hoganlovells.com
michael.zubrow@hoganlovells.com
jo-ann.sagar@hoganlovells.com
sundeep.iyer@hoganlovells.com

Christopher F. Droney (ct00020)
Erick M. Sandler (ct25029)
Sara J. van Vliet (ct30690)
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT  06103
Telephone: (860) 275-0100
Fax: (860) 967-0793
cdroney@daypitney.com
emsandler@daypitney.com
svanvliet@daypitney.com

*Admitted only in New York; supervised by firm members in the District of Columbia.*

*Counsel for Defendant Yale University*

## CERTIFICATE OF SERVICE

This is to certify that on this 17th day of November, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system. Parties may access this filing through the court's CM/ECF system.

<u>/s/ Erick M. Sandler</u>
Erick M. Sandler