UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 3:20-cv-01534-CSH |
| YALE UNIVERSITY, | ) ) ) | |
| Defendant. | ) ) | |

**REPLY IN SUPPORT OF MOTION TO INTERVENE**

Yale concedes that SFFA's motion to intervene is timely, that SFFA has an interest in this action, and that SFFA's claims share common questions of law and fact with the claims in this case. That is not surprising. At least one of SFFA's members was denied admission to Yale's 2020 entering class on account of his race, and this applicant is ready and able to apply to transfer to Yale when it stops discriminating. SFFA moved to intervene shortly after the complaint was filed in order to protect its members' rights to be free from racial discrimination.

Yale instead opposes intervention for two narrow reasons: the United States can protect SFFA's interests and SFFA's participation will delay this case. Neither argument is persuasive. Unlike the United States, which represents the public interest as a whole, SFFA will protect its members' individual interests; and SFFA seeks broader relief than the United States. Nor will SFFA's participation delay discovery in this case, as Yale can simply reproduce the discovery it has already provided to the United States. Importantly, the United States does not oppose SFFA's intervention; the United States thus recognizes that it will not adequately represent SFFA's interests and that SFFA's participation will not delay this case. This Court should grant the motion to intervene.

1

**I.      SFFA Is Entitled to Intervention as of Right.**

As explained, SFFA is entitled to intervention as of right because (1) its motion is timely; (2) it has an interest in this action; (3) its interest may be impaired without intervention; and (4) its interest will not be adequately protected by the parties to the action. Mot. 3-6. Yale concedes that SFFA meets the first two requirements, arguing only that the United States will adequately protect SFFA's interests and that SFFA can instead participate as an *amicus curiae*. Both arguments fail.

**Adequacy of Representation.**   Yale's attempt to raise SFFA's burden fails. *See* Opp. 3-5. This Court must not "mechanically apply a presumption" that the United States will represent SFFA's interests. *Schaghticoke Tribal Nation v. Norton*, 2006 WL 1752384, at *6 (D. Conn. June 14, 2006). Nor would it be "extraordinary," Opp. 3-5, to allow SFFA to intervene in this case. *See, e.g.*, *FTC v. Nudge, LLC*, 2020 WL 6881846, at *5-6 (D. Utah Nov. 23, 2020) (allowing private party to intervene as of right in FTC enforcement action); *Connecticut v. Long Island Lighting Co.*, 535 F. Supp. 546, 549 (E.D.N.Y. 1982) (allowing private parties to intervene as of right in state enforcement action under Clean Air Act). SFFA need only show that it "is so situated that without intervention, disposition of the action *may*, as a practical matter, impair or impede [its] ability to protect its interest." Fed. R. Civ. P. 24(a)(2) (emphasis added). SFFA has made that showing here. Mot. 6.

Yale claims that the United States will protect SFFA's interests because the government and SFFA "ask for the same relief" in their complaints. Opp. 6. But that is not true. Unlike the United States, SFFA seeks a declaratory judgment that "*any* use of race or ethnicity in the educational setting violates" Title VI. *See* SFFA-Compl., Prayer for Relief & ¶¶250-64. SFFA also seeks "[a] permanent injunction requiring Yale to conduct all admissions in a manner that does not permit those engaged in the decisional process to be aware of or learn the race or

ethnicity of any applicant for admission." *Id.*, Prayer for Relief. SFFA and the United States thus do not have the "same ultimate objective." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001).[1]

That the United States "typically litigates cases 'vigorously'" does not mean it will vigorously protect *SFFA's* interests. Opp. 6-7. SFFA seeks to protect its members' individual rights to be free of racial discrimination in the admissions process when applying to Yale, and those interests are not identical to those of the United States. Mot. 6. "Because the federal government is charged with representing the broad public interest, inadequate representation . . . is more likely to be found if the Movants 'assert a personal interest that does not belong to the general public.'" *Schaghticoke*, 2006 WL 1752384, at *6 (quoting *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1498-99 (9th Cir. 1995) (cleaned up)); *see Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992) ("[A] governmental entity charged by law with representing the public interest of its citizens might shirk its duty were it to advance the narrower interest of a private entity.").

Importantly, the United States does not oppose SFFA's motion to intervene. Doc. 8. This is strong evidence that the United States may not adequately represent SFFA's interests. *See Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1255 (10th Cir. 2001) ("The government has

---

[1] Yale criticizes SFFA for copying "word-for-word" portions of the United States' complaint. Opp. 1, 3, 6, 16. But the United States conducted an extensive investigation and uncovered "significant discrimination on the ground of race" in Yale's admission process. U.S.-Compl. ¶158. It is not surprising that SFFA would rely on the government's findings. *See, e.g., United States v. Charleston Cty. Sch. Dist.*, 738 F. Supp. 1513, 1517 (D.S.C. 1990) (allowing private citizens to intervene where their complaint "set forth substantially the same allegations as were set forth in the United States' complaint"). Nor is it "irrelevant" that Yale created its current admissions process in order to discriminate against Jewish applicants. Opp. 6; *see* SFFA Compl. ¶¶12-30. Any "accounting" of Yale's admissions process must include "the racially discriminatory reasons" that led Yale to adopt its admissions process "in the first place." *Ramos v. Louisiana*, 140 S. Ct. 1390, 1401 (2020).

taken no position on the motion to intervene in this case. Its 'silence on any intent to defend the intervenors' special interests is deafening.'" (quoting *Conservation Law Found.*, 966 F.2d at 44)). The "adequacy of [the United States'] representation" of SFFA's interests thus is far from "assured." *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 132-33 (2d Cir. 2001). Notably, in every analogous case cited by Yale, the governmental party *opposed* intervention and argued that it adequately represented the movant's interests. *See United States v. N.Y.C. Hous. Auth.*, 326 F.R.D. 411, 419 (S.D.N.Y. 2018) (U.S. opposed intervention); *SEC v. Bear, Stearns & Co. Inc.*, 2003 WL 22000340, at *1 (S.D.N.Y. Aug. 25, 2003) (SEC opposed intervention); *FTC v. First Capital Consumer Membership Servs., Inc.*, 206 F.R.D. 358, 360 (W.D.N.Y. 2001) (FTC opposed intervention); *United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968, 974-75 (2d Cir. 1984) (governmental plaintiffs opposed intervention as of right); Appellee Br., *United States v. City of N.Y.*, 1998 WL 34089951 (2d Cir. Sept. 28, 1998) (U.S. opposed intervention). Not so here.[2]

**Impairment Without Intervention.** Yale briefly argues that SFFA need not intervene because SFFA can participate as an *amicus*. Opp. 10-11. As explained, however, SFFA must be allowed to intervene to protect its members' rights against the potential *stare decisis* effect of this case. Mot. 5. Participating as an *amicus* would not be sufficient, as it would deprive SFFA of

---

[2] Yale claims that intervention should be denied because SFFA's presence will raise "novel legal and factual questions . . . as to whether SFFA possesses Article III standing." Opp. 8-9. This concern is irrelevant as to whether SFFA is entitled to intervention as of right. *See* Fed. R. Civ. P. 24(a); *In re Sierra Club*, 945 F.2d 776, 779 (4th Cir. 1991) ("The district court … incorrectly bolstered its denial of intervention of right by referring to concerns of judicial economy . . . . Although those issues have a place in motions for permissive intervention, Rule 24(a) affords them no weight."). Regardless, there is nothing "novel" about SFFA's standing, as explained below. *Infra* II.

the "full litigating status" necessary to protect its rights. *United States v. Michigan*, 940 F.2d 143, 165 (6th Cir. 1991).

This Court should thus "'reject [Yale's] claim that *amicus curiae* status is sufficient for [SFFA] to protect [its] interests.'" *United States v. City of L.A.*, 288 F.3d 391, 400 (9th Cir. 2002). This argument is circular: every would-be intervenor could be an *amicus*, but the question is whether SFFA "satisfies the requirements of [Rule] 24(a)." *Mayo v. Jarvis*, 2015 WL 13700484, at *4 (D.D.C. Jan. 21, 2015). Because SFFA does, "the Court *must* permit it to intervene." *Id*. (emphasis added); *accord Nuesse v. Camp*, 385 F.2d 694, 704 (D.C. Cir. 1967) (explaining that a movant who satisfies Rule 24 "is entitled to participate as a party and not merely as a friend of court"). "[R]elegat[ion] to the status of amicus curiae is not an adequate substitute for participation as a party" because, as an *amicus*, SFFA could not file motions, take appeals, participate in discovery, or raise claims that the government does not. *See Nuesse*, 385 F.2d at 704 & n.10; *City of L.A.*, 288 F.3d at 400; *Kane Cty. v. United States*, 928 F.3d 877, 896 (10th Cir. 2019). SFFA satisfies every requirement for intervention as of right, so it should be a plaintiff in this case—not an *amicus*.[3]

## II.   Alternatively, SFFA Should Be Granted Permissive Intervention.

As explained in its motion to intervene, SFFA is entitled to permissive intervention because (1) its motion is timely, (2) SFFA's claims share common questions of law and fact, and (3) granting intervention will not unduly delay or prejudice the adjudication of the original

---

[3] SFFA's oppositions to intervention in its cases against Harvard and the University of North Carolina do not conflict with its position here. In those cases, the prospective intervenors had no protectable interest in the litigation. *See, e.g., SFFA v. Harvard*, 308 F.R.D 39, 49 (D. Mass. 2015) (denying intervention because the proposed intervenors were current Harvard students and thus had "no remaining interest in Harvard's continued consideration of race and ethnicity with respect to their own applications"). That is not the case here. Mot. 4-5.

parties' rights. Mot. 7-8. Yale disputes only the last factor, arguing that allowing SFFA to intervene will delay the case and harm Yale. Opp. 11-17. This argument fails.

Yale asserts that SFFA's intervention would "extend discovery and unduly delay this case" because Yale has already produced documents to the United States and has "not produced any of this information to SFFA." Opp. 12-14. But SFFA would not need to "start from square one." Opp. 12. Yale can simply reproduce the discovery (which presumably is already in electronic form) and SFFA will be in the same position as the United States. Nor is there any chance that the "scope of [SFFA's] discovery," Opp. 13, will be narrower than the United States'. For example, SFFA received extensive discovery in its case against Harvard. *See generally SFFA v. Harvard*, 397 F. Supp. 3d 126, 133-83 (D. Mass. 2019) (describing extensive facts, witnesses, and documents concerning Harvard's admissions process). That is because, even in cases involving a *single* applicant, courts must "giv[e] close analysis to the evidence of how the [race-conscious admissions] process works in practice." *Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297, 312 (2013). In any event, Yale's concerns about the scope of SFFA's discovery rights are "premature" because this issue "can be addressed by this Court's ability to supervise discovery." *Bldg. & Realty Inst. of Westchester & Putnam Ctys., Inc. v. New York*, 2020 WL 5658703, at *7-8 (S.D.N.Y. Sept. 23, 2020).

Yale argues that "permitting SFFA to intervene would also inject novel legal questions regarding Article III standing into this dispute." Opp. 14-15. But Yale cannot (and does not) contend that briefing a motion on SFFA's standing "will unduly delay or prejudice the adjudication of the rights of the existing parties." Fed. R. Civ. P. 24(b). Regardless, there is nothing "novel" about SFFA's standing. Courts unanimously have rejected these arguments. *See SFFA v. Harvard*, 2020 WL 6604313, at *17-19 (1st Cir. Nov. 12, 2020) (SFFA has Article III

6

standing to challenge legality of university's admissions process); *SFFA v. Harvard*, 397 F. Supp. 3d at 183-84 (same); *SFFA v. Harvard*, 346 F. Supp. 3d 174, 190-92 (D. Mass. 2018) (same); *SFFA v. Harvard*, 261 F. Supp. 3d 99, 103-11 (D. Mass. 2017) (same); *SFFA v. Univ. of N.C.*, 2018 WL 4688388, at *3-6 (M.D.N.C. Sept. 29, 2018) (same); *SFFA v. Univ. of N.C.*, 2019 WL 4773908, at *5 & n.9 (M.D.N.C. Sept. 30, 2019) (same). And Yale's assumption that SFFA's claim will become moot if its current standing member can no longer transfer, *see* Opp. 14-15, misunderstands how associational standing works. Even assuming Yale's misconduct were not capable of repetition yet evading review, SFFA can litigate so long as it has *a* member with standing; it does need to rely on the *same* member as the case progresses. *See Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 718 (2007); *NRDC v. Mineta*, 2005 WL 1075355, at *5 (S.D.N.Y. May 3, 2005).[4]

Nor is there any evidence that granting intervention to SFFA will "encourage other parties" to seek intervention. Opp. 16. No other party has sought to intervene in support of the United States, and it is unlikely that any will. *See* Mot. 2-3. If anyone tried, this Court could simply deny the subsequent motion, which would face timeliness and adequacy concerns not present here. *See N.Y.C. Hous. Auth.*, 326 F.R.D. at 419.

Yale's remaining arguments fare no better. As explained, the United States will not adequately protect SFFA's interests. *Supra* I. Even if it would, "permissive intervention … does not require the [movant] to demonstrate that its interests are inadequately represented under any standard." *Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 801 n.4 (7th Cir. 2019); *accord id.* at 803 (similar); *Ohio Democratic Party v. Blackwell*, 2005 WL 8162665, at *2 (S.D.

---

[4] In fact, SFFA need not prove standing at all, to the extent it seeks overlapping relief with the United States. *See Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 70 n.6 (2d Cir. 2019); *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 190 (2d Cir. 1978).

Ohio Aug. 26, 2005) ("[T]he Court may permit a party to intervene … even when the intervenor's interests are completely and adequately represented by an existing party."). Nor is SFFA simply "rid[ing] the Government's coattails." Opp. 16. SFFA moved swiftly to intervene and bring its claims after the United States concluded its multi-year investigation. SFFA seeks to intervene to avoid having to file a separate lawsuit.

To be clear, if SFFA's motion is denied, it intends to file its own lawsuit against Yale. Denying intervention thus serves no purpose. It will not avoid litigation over any issue, including discovery and Article III standing, as those issues would have to be addressed in SFFA's parallel suit anyway. *See Eclipse Grp. LLP v. Target Corp.*, 2016 WL 4917112, at *3 (S.D. Cal. Sept. 15, 2016) (granting intervention because "if [movant's] intervention is denied he likely will bring his own lawsuit asserting nearly identical claims against Defendants for the same work forming the basis of Plaintiff's claims"). And denying intervention will not change how this case is litigated either, as "SFFA's … own suit … would likely be consolidated with [this one] in any event." *League of Women Voters of N.C. v. North Carolina*, 2014 WL 12770081, at *3 (M.D.N.C. Jan. 27, 2014). Granting intervention, by contrast, would directly serve the goals of Rule 24(b) by "prevent[ing] a multiplicity of suits" and "resolving all related issues in one lawsuit." *Wash. Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990); *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 69 (2d Cir. 1994). This Court should allow SFFA, Yale, and the United States to efficiently litigate together in this case, rather than forcing them to simultaneously litigate in two overlapping cases.

## CONCLUSION

For all these reasons, the motion to intervene should be granted.

|  |  |
|---|---|
| | Respectfully submitted, |
| Dated: December 7, 2020 | */s/   J. Michael Connolly* |
| | William S. Consovoy* |
| | J. Michael Connolly (CT29695) |
| | Cameron T. Norris (*pro hac vice*) |
| | Steven C. Begakis* |
| | CONSOVOY MCCARTHY PLLC |
| | 1600 Wilson Boulevard, Suite 700 |
| | Arlington, VA 22209 |
| | (703) 243-9423 |
| | will@consovoymccarthy.com |
| | mike@consovoymccarthy.com |
| | steven@consovoymccarthy.com |
| | |
| | *Counsel for Students for Fair Admissions, Inc.* |
| | |
| | **Pro hac vice* motion forthcoming* |

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on counsel of record via the Court's electronic filing and service on December 7, 2020.

> */s/   J. Michael Connolly*
> Counsel for Students for Fair Admissions, Inc.