

Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
T  +1 202 637 5600
F  +1 202 637 5910
www.hoganlovells.com

December 31, 2020

Via CM/ECF

Hon. Charles S. Haight Jr.
Richard C. Lee United States Courthouse
141 Church Street
New Haven, Connecticut 06510

Re:   SFFA opposition to intervention in Students for *Fair Admissions, Inc. v. University of Texas* (W.D. Tex.)

Dear Judge Haight,

We write on behalf of our client, Defendant Yale University, to inform the Court of the attached memorandum of law opposing intervention that Students for Fair Admissions, Inc. (SFFA) filed on December 23, 2020 in *Students for Fair Admissions, Inc. v. University of Texas at Austin*, No. 1:20-cv-00763 (W.D. Tex.), a case challenging the University of Texas's admissions policy. In its memorandum, SFFA opposed the proposed intervention of eight current students and three organizations, including the Texas chapter of the NAACP. Much like its filings opposing intervention in litigation involving Harvard University and the University of North Carolina, SFFA's latest filing reinforces that the best course in cases like these is to deny intervention and permit putative intervenors to participate as *amici curiae* instead.

At least three aspects of SFFA's recent filing in the Texas litigation are relevant to SFFA's intervention motion in this case.

*First*, SFFA argued in its December 23 filing that there are two strong presumptions that support the conclusion that the University of Texas, a government entity, will protect the putative intervenors' interests. SFFA expressly acknowledged that the government "is presumed to represent the interests of all its citizens." Mem. at 5 (citation and quotation omitted). And it argued that the putative intervenors and the University of Texas share the "same ultimate objective"—both seek "to preserve UT's race-conscious admissions policy"—and that the University is therefore presumed to adequately represent the putative intervenors' interests. *Id.* (citation and quotation omitted). Indeed, SFFA correctly argued that "the incongruity of interests" must be "pronounced" to warrant intervention. *Id.* at 7 (citation and quotation omitted).

*Second*, in opposing both mandatory and permissive intervention, SFFA argued that intervention in the Texas litigation would unduly delay the proceedings. SFFA noted that intervention should be denied because the "parties already negotiated over scheduling," *id.* at 8, and the proposed intervenors "seek far-reaching fact and expert discovery," *id.* at 10. And it explained that "the addition of [multiple] parties propounding discovery, presenting expert

Hogan Lovells US LLP is a limited liability partnership registered in the District of Columbia. "Hogan Lovells" is an international legal practice that includes Hogan Lovells US LLP and Hogan Lovells International LLP, with offices in:  Alicante  Amsterdam  Baltimore  Beijing  Brussels  Caracas  Colorado Springs  Denver  Dubai  Dusseldorf  Frankfurt  Hamburg  Hanoi  Ho Chi Minh City  Hong Kong  Houston  Johannesburg  London  Los Angeles  Luxembourg  Madrid  Mexico City  Miami  Milan  Minneapolis  Monterrey  Moscow  Munich  New York  Northern Virginia  Paris  Perth  Philadelphia  Rio de Janeiro  Rome  San Francisco  São Paulo  Shanghai  Silicon Valley  Singapore  Sydney  Tokyo  Ulaanbaatar  Warsaw  Washington DC  Associated offices:  Budapest  Jeddah  Riyadh  Zagreb.  For more information see www.hoganlovells.com

testimony, cross-examining witnesses, and participating in all other aspects of the adversary process would inevitably slow and unduly complicate the progress of this litigation." *Id.* at 9 (quoting *SFFA v. President & Fellows of Harvard Coll.*, 308 F.R.D. 39, 52 (D. Mass. 2015)).

*Third*, SFFA asserted that the court in the Texas litigation should grant the proposed intervenors *amici curiae* status rather than granting them full-blown party status. *See* Mem. at 10-11. SFFA explained that where the putative intervenors seek to "share with the Court their views and perspectives" on the legal question of whether a university's "policy of considering race as a factor in undergraduate admissions decisions" is lawful, this is "precisely the kind of presentation that can and should be shared through participation as *amici curiae*." *Id.* at 10. And it noted that the "fairest and most efficient path forward is to allow Movants to participate as *amici curiae*." *Id.*

SFFA's arguments in the Texas litigation reinforce that the Court should deny SFFA's intervention motion here and permit it to participate as *amicus curiae* instead. By SFFA's own admission, this Court should presume that the Department of Justice will adequately represent SFFA's interests: Because the government "is presumed to represent the interests of all its citizens," and because the Department of Justice and SFFA share the "same ultimate objective," SFFA's own arguments demonstrate that the Department of Justice adequately represents SFFA's interests. *Id.* at 5. And because SFFA "seek[s] far-reaching fact and expert discovery," SFFA itself recognizes that its participation as a full-blown party "would inevitably slow and unduly complicate the progress of this litigation." *Id.* at 9-10. Thus, as SFFA itself has argued, the "fairest and most efficient path forward is to allow" SFFA to "participate as *amici curiae*." *Id.* at 10.

In a footnote in its Texas filing, SFFA offered two reasons why its position on intervention in the Texas litigation "does not conflict" with its motion to intervene in the United States' lawsuit against Yale. *See id.* at 8 n.3. Neither reason is persuasive. *First*, SFFA asserted that its members have "a protectable interest in" the Yale litigation, whereas the intervenors in the Texas lawsuit do not. *Id.* But that is a non sequitur. No matter whether SFFA has an "interest" in this litigation, this Court should deny SFFA's motion to intervene for several other reasons, including that the United States will adequately protect SFFA's interests and that SFFA's presence will unduly delay this lawsuit. *See* Mem. of Law in Opp'n to Mot. to Intervene, ECF 23, at 3-18. *Second*, SFFA argued that granting intervention in the Yale case would prevent "a multiplicity of suits." Mem. at 8 n.3. But the Second Circuit has rejected the notion that intervention is warranted any time a proposed-intervenor might bring a parallel suit. *See* Tr. of Oral Arg., ECF 44, at 43; *see also United States v. City of New York*, 198 F.3d 360, 366 (2d Cir. 1999). Indeed, it is almost always true that a proposed plaintiff-intervenor could initiate its own lawsuit. By SFFA's logic, then, courts would need to grant intervention in nearly every case. That is not the law, and the Court should not grant intervention on that basis here.

Respectfully submitted,

/s/ Neal Kumar Katyal

Neal Kumar Katyal (*pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004
Telephone: (202) 637-5600
neal.katyal@hoganlovells.com

Christopher F. Droney (ct00020)
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103
Telephone: (860) 275-0100
Fax: (860) 967-0793
cdroney@daypitney.com

cc: Counsel of Record (via CM/ECF)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC., ) ) ) *Plaintiff*, ) ) v. ) ) UNIVERSITY OF TEXAS AT AUSTIN, et al. ) ) ) *Defendants*. ) ) | Case No. 1:20-cv-763-RP |

## SFFA'S OPPOSITION TO PROPOSED DEFENDANT-INTERVENORS' MOTION TO INTERVENE

William S. Consovoy (*pro hac vice*)
J. Michael Connolly
Cameron T. Norris
Steven C. Begakis (*pro hac vice*)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
will@consovoymccarthy.com
mike@consovoymccarthy.com
cam@consovoymccarthy.com
steven@consovoymccarthy.com

Dated: December 23, 2020

*Counsel for Plaintiff Students for Fair Admissions, Inc.*

The use of racial preferences at the University of Texas at Austin ("UT") and other elite universities is an issue of national importance. SFFA thus has no desire to prevent Movants—eight current UT seniors, two UT student organizations, and the Texas NAACP—from weighing in on the relevant issues in this case. This Court should, in its discretion, allow Movants to participate as *amici curiae*.

But the Court should not grant intervention as of right or permissive intervention. Movants have no legally protectable interest in UT's continued use of racial preferences and therefore would not suffer any cognizable injury if SFFA prevailed in this case. UT also will vigorously defend its admissions policies and therefore will adequately represents any interests Movants may have. Finally, allowing eleven new defendants to intervene in this case will inevitably impair the parties' ability to litigate this case efficiently.

Courts in this district have twice denied nearly identical motions to intervene. *See* Order, *Fisher v. Univ. of Tex. at Austin*, No. 1:08-CV-263 (W.D. Tex. Aug. 11, 2008) (Doc. 83) (denying motion to intervene in challenge to UT's undergraduate admissions policy); *Hopwood v. Texas*, No. A-92-CA-563-SS, 1994 WL 242362 (W.D. Tex. Jan. 20, 1994) (denying motion to intervene in challenge to UT School of Law's admissions policy); *see also Hopwood v. Texas*, 21 F.3d 603, 604-06 (5th Cir. 1994) (same). The Court should do the same here.

**I.      Movants are not entitled to intervention as of right.**

To intervene as of right, an applicant must meet four requirements: "(1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; [and] (4) the applicant's interest must be inadequately represented by the existing parties to the suit." *Haspel & Davis Milling & Planting Co. Ltd. v. Bd. of Levee Comm'rs of the Orleans Levee Dist. & La.*, 493 F.3d 570,

1

578 (5th Cir. 2007) (citation omitted). "Failure to satisfy any one requirement precludes intervention of right." *Id.* Movants fail all four requirements.

### A. Movants do not have a "direct, substantial, legally protectable interest" warranting intervention as of right.

Rule 24(a)(2)'s requirement of an "interest" requires a "direct, substantial, and legally protectable" interest and "must be one which the *substantive* law recognizes as belonging to or being owned by the applicant." *Saldano v. Roach*, 363 F.3d 545, 551 (5th Cir. 2004) (cleaned up). "Not any interest . . . is sufficient." *Id.* A proposed intervenor lacks this interest when it has only a "generalized preference that the case come out a certain way." *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) (citing cases).

Movants argue that they are entitled to intervention as of right because they have an interest in "preserving UT's race-conscious admissions policy." Mem. 6. In particular, Movants assert interests in the "educational benefits that flow from a diverse student body," the "educational and advancement opportunities" from being admitted or denied on the basis of race, and the ability for applicants to discuss their race in applications for admission. Movants' Br. 6-9. These generalized interests are insufficient for at least two reasons.

*First*, Movants' asserted interests are not recognized by "*substantive* law . . . as belonging to or being owned by the applicant." *Saldano*, 363 F.3d at 551. The Supreme Court has made clear that there is no protectable interest—let alone a substantial protectable interest—in the continued use of racial preferences at UT or anywhere else. *See Schuette v. BAMN*, 572 U.S. 291 (2014). The *Schuette* plaintiffs, who included "prospective applicants to Michigan public universities," claimed that a ballot initiative banning the use of racial preferences in admissions violated their legal rights, but the Court disagreed. *Id.* at 298, 300, 310, 314. While use of racial preferences in admissions is presumptively unconstitutional and thus subject to strict scrutiny, a university's decision to discontinue such racial preferences is never illegal. *See id.* at 298-310. As the Court explained, a university's decision to shift

2

from a race-based admissions system to a race-neutral admissions system does not cause any potential applicant "specific injury." *Id.* at 310.

*Schuette* thus is fatal to Movants' assertion of any legal interest. By reaffirming that racial preferences are presumptively unconstitutional and holding that a university's decision to discontinue use of racial preferences is never illegal, *Schuette* makes plain that Movants would lack any legal interest even if UT voluntarily decided to discontinue racial preferences. *Id.* at 298-310; *see SFFA v. President & Fellows of Harvard Coll.*, 308 F.R.D. 39, 47 (D. Mass.), *aff'd*, 807 F.3d 472 (1st Cir. 2015) (recognizing that Harvard students and applicants have "no constitutional right to have their race considered by Harvard"). Whether UT's challenged conduct is ended voluntarily or by court order, the end result would be an admissions system that would in no way disparage the rights of any applicant for undergraduate admission. *See Harvard*, 308 F.R.D. at 48 ("Plaintiff's interest in preventing Harvard from considering race in its admissions decisions is qualitatively different from the proposed-intervenors' interest in supporting Harvard's admissions policies. The former gives rise to a constitutional claim, while the latter does not.").

*Second*, as a matter of law, Movants have no *direct* interest in the "educational benefits that flow from a diverse student body," the "educational and advancement opportunities" from being admitted or denied on the basis of race, or in the ability to discuss race in their applications for admission. Movants' Br. 6-9. Movants seek "to protect their interests *in [the university's] right* to consider race in admissions." *Harvard*, 308 F.R.D. at 47 (citation omitted; emphasis added). These interests are "indirect, as [they are] derivative of [UT's] right to consider race in its admissions process." *Id.* at 47-48.

This lack of a direct interest is particularly true for the eight UT seniors and two UT student organizations because none of them are applicants or have applicants as members. These students already have been admitted to, and enrolled in, UT. "Therefore, they have no remaining interest in

3

[the university]'s continued consideration of race and ethnicity with respect to their own applications." *Id.* at 49. "Rather, their purported interest is in continuing to enjoy the academic and personal benefits that they believe arise out of [UT]'s racially diverse student body, and their desire to see an increase in the number and diversity of underrepresented minority groups admitted." *Id.* These interests are far too generalized for purposes of intervention. *See id.*

*Brumfield* and *Black Fire Fighters* are readily distinguishable. Those cases involved attempts to divest concrete benefits from the intervenors. In *Black Fire Fighters*, the intervenors were a group of firefighters, and the city of Dallas had "entered into a consent decree . . . agreeing to give a specified number of promotions to black officers who would not otherwise be chosen because of their scores on an exam." *Brumfield v. Dodd*, 749 F.3d 339, 343 (5th Cir. 2014) (citing *Black Fire Fighters Ass'n of Dallas v. City of Dallas*, 19 F.3d 992, 994 (5th Cir. 1994)). Similarly, in *Brumfield*, the intervenors were low-income parents "whose children receive[d] school vouchers via Louisiana's Scholarship Program." *Brumfield*, 749 F.3d at 340. Here, Movants seek only to vindicate their abstract interest in UT's use of race in admissions. That is insufficient under Rule 24(a).

### B. Movants' interests will not be impaired or impeded without intervention.

Because Movants lack a significantly protectable interest in this action, they cannot show that a denial of intervention threatens to impair their rights. Fed. R. Civ. P. 24(a)(2). Even if they had a protectable interest, it would not be impaired without intervention. The eight current UT students are seniors. Mem. 3-4. Because they will graduate before this case has even gone to trial, there is no chance they will be denied the "educational benefits of diversity" without intervention. Similarly, the eight UT students, the UT Organizations' members, and the Texas NAACP members who are seniors *already have applied* to UT; there thus is no chance that they will be "effectively prohibit[ed]" from discussing their race in their applications. Mem. 9-11. Indeed, because trial will not even occur until

4

September 2022, it will be years before any applicants are affected at all. These alleged impairments of interests are too speculative to warrant intervention as of right for these intervenors.[1]

### C. Movants cannot overcome the presumption that UT will adequately represent Movants' interests.

Movants also cannot demonstrate that they are inadequately represented by UT. "The burden of establishing inadequate representation is on the applicant for intervention." *Haspel & Davis*, 493 F.3d at 578. Importantly, Movants are required to overcome two presumptions of adequate representation here. First, "in a suit involving a matter of sovereign interest, the State is presumed to represent the interests of all of its citizens." *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 2015 WL 11613286, at *4 (W.D. Tex. Dec. 22, 2015). Second, "when the party seeking to intervene has the same ultimate objective as a party to the suit, the existing party is presumed to adequately represent the party seeking to intervene unless that party demonstrates adversity of interest, collusion, or nonfeasance." *Haspel & Davis*, 493 F.3d at 578-79 (citation omitted); *see, e.g.*, *Baker v. Wade*, 743 F.2d 236, 240-41 (5th Cir. 1984). These presumptions apply here because UT is a public university and Movants' objective is the same as UT's—to preserve UT's "race-conscious admissions policy." *Compare* Movants' Br. 2, *with* UT Answer 2-5.

Movants cannot overcome these presumptions because Movants never claim that UT has engaged in "collusion" or "nonfeasance" or has an "adversity of interest" to them. *Haspel & Davis*, 493 F.3d at 578-79. Instead, Movants argue that intervention is warranted because, while "UT must balance racial and ethnic diversity against other goals and factors," Movants "can advocate for the

---

[1] SFFA's lawsuit also would not "reduce diversity on campus." Mem. 9-10. SFFA contends that "there are a host of race-neutral alternatives that if implemented can achieve student body diversity without resorting to racial preferences." Am. Compl. ¶212. And SFFA, of course, has not "disparag[ed] . . . the reputation, honor, and integrity of Movants." Mem. 10. To the contrary, SFFA's criticisms are reserved for UT, which is employing an admissions policy that discriminates on the basis of race. *See generally City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 493-94 (1989) (plurality).

5

constitutionality of the race-conscious aspects of the Policy without competing considerations." Movants Br. 12.

But the Fifth Circuit rejected these precise arguments in *Hopwood*. There, two UT student organizations moved to intervene as defendants in a challenge to UT School of Law's admissions policies. The organizations made the same arguments that Movants do here. They argued:

> [UT] cannot adequately represent their interest because 1) the long history of discrimination against African-Americans by [UT] weighs against [UT's] willingness to vigorously represent the interests of the African-American students; 2) [UT's] interests are broader in that they must balance the interests of the African-American students against other students as well as balancing educational goals, fiscal responsibility, administrative concerns and public opinion; while the [organizations'] only interest is in preserving an admissions policy that remedies the past effects of discrimination and fosters an atmosphere that is receptive to African-American students, and 3) the [organizations] are in a better position to present evidence of recent discrimination."

*Hopwood*, 21 F.3d at 605. The Fifth Circuit disagreed, holding that "the proposed intervenors have not demonstrated that [UT] will not strongly defend its affirmative action program. Nor have the proposed intervenors shown that they have a separate defense of the affirmative action plan that [UT] has failed to assert." *Id.* at 606; *see also Hopwood*, 1994 WL 242362, at *1 (no inadequate representation because "as a practical matter, the prospective intervenors and [UT] have the same ultimate objective in this lawsuit—the preservation of the admissions policy and procedure currently used by the law school"). *Hopwood* controls the outcome here.

The district court in the *Fisher* litigation reached a similar result. There, the proposed intervenors—Black and Hispanic high-school students who intended to apply to UT, current UT students, and UT student groups—moved to intervene as defendants in a challenge to UT's racial preferences in undergraduate admissions. *See Fisher v. Univ. of Tex. at Austin*, No. 1:08-cv-263 (W.D. Tex. 2008) (Docs. 63, 72). The proposed-intervenors made the same arguments Movants make here—that they had an interest in UT continuing its affirmative action policy, that they had a stronger interest in defending UT's policy than UT, and that UT would not adequately defend its policy because of its

6

conflicting interests. *See id.* The District Court disagreed, denying intervention because "movants' interests [are] adequately represented by the existing parties." *See* Order, *Fisher*, No. 1:08-cv-263 (W.D. Tex. Aug. 11, 2008) (Doc. 83).

Movants' suggestion that UT is not sufficiently motivated to defend the use of racial preferences in admissions is untenable. *See* Movants' Br. 12-13. UT has made clear that it will vigorously defend its admissions system, just as it did in the *Fisher* litigation. *See* Answer 2-5. Nor is there any chance that UT will avoid "develop[ing] defenses that draw attention to its history of discrimination [and] ongoing problems with race relations." Mem. 13; *see, e.g.*, UT Brief at 4, *Fisher*, No. 14-981, 2015 WL 6467640, at *4 (S. Ct. Oct. 26, 2015) (UT describing its history of racial segregation and the "lingering perception" that UT is closed to minority students and accusing the petitioner of "ignor[ing] this history").

Moreover, Movants fail to "demonstrate how these allegedly divergent interests would have any impact on the state's defense of its affirmative action policy." *Texas*, 805 F.3d at 662 (citing *Hopwood*, 21 F.3d at 605). The "general notion" that UT has "broader interests at some abstract level is not enough." *Id.* at 663 (cleaned up). Courts consistently reject attempts to intervene on this general notion alone. *See Veasey v. Perry*, 577 F. App'x 261, 262-63 (5th Cir. 2014); *Staley v. Harris Cty. Tex.*, 160 F. App'x 410, 413-14 (5th Cir. 2005); *Terrebonne Par. Branch NAACP v. Jindal*, 2016 WL 2743525, at *5-7 (M.D. La. May 11, 2016); *Wal-Mart Stores*, 2015 WL 11613286, at *4-6 (W.D. Tex. Dec. 22, 2015); *G & H Dev., LLC v. Penwell*, 2014 WL 12663199, at *3-5 (W.D. La. Sept. 4, 2014).

In all Fifth Circuit cases permitting intervention, "the incongruity of interests [has been] far more pronounced" than here. *Veasey*, 577 F. App'x at 262-63; *see also Lamar v. Lynaugh,* 12 F.3d 1099, *1 n.4 (5th Cir. 1993) (unpub.) ("[A] mere disagreement over litigation strategy . . . does not, in and of itself, establish inadequacy of representation." (citation omitted)). Simply put, Movants are not entitled

7

to intervene as of right because they "have not demonstrated that [UT] will not strongly defend its affirmative action program." *Hopwood*, 21 F.3d at 606.[2]

### D. Movants' application is untimely.

"To determine whether a motion to intervene is timely, courts must consider the totality of the circumstances." *United States v. Covington Cty. Sch. Dist.*, 499 F.3d 464, 465 (5th Cir. 2007). "[T]here are four factors to consider in determining whether a motion to intervene is timely: (1) the length of time the applicants knew or should have known of their interest in the case; (2) prejudice to existing parties caused by the applicants' delay; (3) prejudice to the applicants if their motion is denied; and (4) any unusual circumstances." *Id.* at 466.

Here, Movants did not seek to intervene until five months after the complaint was filed and two months after UT filed its answer. Much shorter delays have been found untimely. *See, e.g.*, *NAACP v. New York*, 413 U.S. 345, 367, 369 (1973) (motion to intervene filed 17 days after "the date [movants] allegedly were first informed of the pendency of the action" was deemed "untimely"). Contrary to Movants, nothing in UT's amended answer made it "apparent that UT could not adequately represent their stake in the case." Mem. 6. The Movants' delay also "would prejudice" the existing parties. *Covington Cty. Sch. Dist.*, 499 F.3d at 466. The parties already negotiated over scheduling, and their proposals likely would need to be revisited if Movants were allowed to intervene. For all of these reasons, this Court should deny intervention of right.[3]

---

[2] Movants' "unique evidence" showing that UT's consideration of race in admissions is necessary to remedy past discrimination is not a constitutional rationale for racial preferences in admission. *See Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297, 308 (2013).

[3] SFFA's recent attempt to intervene in the United States' case against Yale does not conflict with its position here. SFFA has a protectable interest in that litigation because it seeks to protect its members' constitutional rights to be free from racial discrimination. *See United States v. Yale Univ.*, No. 3:20-cv-1534 (D. Conn. 2020) (Docs. 5, 40). In addition, if SFFA's motion to intervene is denied, SFFA intends to file its own lawsuit against Yale. Permissive intervention thus prevents a multiplicity of suits and resolves all related issues in one lawsuit.

8

## II.     Movants should be denied permissive intervention.

Movants also should be denied permissive intervention. Permissive intervention is not appropriate unless "the intervention request is timely, the intervenor's 'claim or defense and the main action have a question of law or fact in common,' and granting intervention will not unduly delay or prejudice the original parties in the case." *United States v. City of New Orleans*, 540 F. App'x 380, 381 (5th Cir. 2013) (quoting Fed. R. Civ. P. 24(b)). A district court "may deny permissive intervention even when the requirements of Rule 24(b) are met." *Id.* Movants cannot satisfy these requirements.

Permissive intervention is not appropriate because allowing Movants to participate in this case will "unduly delay [and] prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Although Movants claim that their involvement will not "prolong[] discovery or delay[] resolution of this case," Mem. 15, that is wishful thinking. Movants seek far-reaching fact and expert discovery on a wide range of (mostly irrelevant) issues. The topics on which they seek to conduct discovery and present evidence include, just to name a few: (1) "the present-day effects of Texas's long history of segregation and discrimination, including within UT itself"; (2) the "discriminatory effects of UT's historical and ongoing reliance on standardized test scores" and its "roots in post-*Brown* attempts to preserve segregated schools in Texas"; (3) "evidence related to continuing racial tensions on campus"; and (4) the "First Amendment concerns" of students who wish to write about their race in their essays. *Id.* at 12-13.

As the *Harvard* court recognized in denying permissive intervention, "the addition of [multiple] parties propounding discovery, presenting expert testimony, cross-examining witnesses, and participating in all other aspects of the adversary process would inevitably slow and unduly complicate the progress of this litigation." 308 F.R.D. at 52; *see also G & H Dev.*, 2014 WL 12663199, at *4 ("The addition of another defendant, and its attorneys, would make scheduling of discovery and court deadlines more complicated, there would be more questions for every witness and more briefs on

9

every issue in what is already a complicated case."). Moreover, denying permissive intervention will not harm Movants because they have no protectable interest at stake in this litigation and UT will adequately protect any conceivable interest that they do have.[4]

The fairest and most efficient path forward is to allow Movants to participate as *amici curiae*, which will not "complicate proceedings, lengthen the discovery process, add expense, [or] significantly delay the ultimate resolution of this case." *Harvard*, 308 F.R.D. at 52. Movants are chiefly concerned with matters of law, policy, and historical fact. They wish to support UT's policy of considering race as a factor in undergraduate admissions decisions and to share with the Court their views and perspectives. That is precisely the kind of presentation that can and should be shared through participation as *amici curiae*. *See Veasey*, 577 F. App'x at 263; *Hopwood*, 21 F.3d at 605-06; *Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984); *Harvard*, 308 F.R.D. at 52-53.

Movants rely on *SFFA v. UNC*, 319 F.R.D. 490 (M.D.N.C. 2017), *see* Mem. 15, but even that court did not grant the type of intervention that Movants seek here. The intervenors in *UNC* sought only "limited intervention to conduct discovery and present evidence" on two narrow issues related to UNC. 319 F.R.D. at 495. The court granted the motion, but it made clear that the intervenors were not "permitted access to any confidential information that may be produced in discovery between the parties" and could conduct only limited discovery into (1) "the history of segregation and discrimination at [UNC]" and (2) the effect of UNC's existing, and SFFA's proposed, admissions processes on "the critical mass of diverse students at [UNC]." *Id.* at 497. Similarly, in SFFA's case against Harvard, the district court *denied* permissive intervention and prohibited the proposed intervenors from "propound[ing] discovery, participat[ing] in depositions, obtain[ing] copies of documents requested in discovery, or otherwise participat[ing] in discovery in this case." *Harvard*, 308

---

[4] As explained above, permissive intervention also is improper because the motion to intervene is untimely.

10

F.R.D. at 53. Instead, the proposed intervenors, "[a]s *amici curiae*," could submit "declarations, file substantive briefs on dispositive motions, and participate in oral arguments on those motions," and, "[s]hould [the] case proceed to trial, . . . file a motion to participate in the proceedings." *Id.* at 52. Simply put, neither court gave the intervenors the sweeping intervention they request here.

The Court instead should follow *Hopwood* and *Fisher*. In *Hopwood*, the district court denied permissive intervention because it would not be "the fairest and most efficient method of handling the lawsuit" and would "needlessly increase cost and delay disposition of the litigation." 1994 WL 242362, at *2. The more "appropriate role" for the movants was *amici curiae*. *Id.* at *2 n.3; *see also Hopwood*, 21 F.3d at 606 (affirming denial of permissive intervention). Similarly, in *Fisher*, the court denied permissive intervention because the proposed-intervenors interests were "adequately represented by the existing parties" and denying intervention would "be in the best interest of an efficient resolution of this case." Order, *Fisher v. Univ. of Tex. at Austin*, No. 1:08-CV-263 (W.D. Tex. Aug. 11, 2008) (Doc. 83). The court instead authorized the proposed intervenors to participate as *amici curiae. See id.* This Court should follow the same path here.

## CONCLUSION

For all these reasons, the Court should deny the motion to intervene.

11

Respectfully submitted,

*/s/ J. Michael Connolly*

William S. Consovoy (*pro hac vice*)
J. Michael Connolly
Cameron T. Norris
Steven C. Begakis (*pro hac vice*)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
will@consovoymccarthy.com
mike@consovoymccarthy.com
cam@consovoymccarthy.com
steven@consovoymccarthy.com

Dated: December 23, 2020     *Counsel for Plaintiff Students for Fair Admissions, Inc.*

12

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on counsel of record for Defendants and Movants via the Court's electronic filing and service on December 23, 2020.

*/s/ J. Michael Connolly*