UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, | Civil Action No. |
| Plaintiff, | 3:20 - CV - 1534 (CSH) |
| v. | |
| YALE UNIVERSITY, | **JANUARY 19, 2021** |
| Defendant. | |

**RULING ON MOTION TO INTERVENE [Doc. 5]**

**HAIGHT, Senior District Judge:**

Plaintiff United States of America alleges that Defendant Yale University discriminates on the basis of race against Asian and White applicants in the undergraduate admissions process to Yale College, in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d, *et seq*. ("Title VI"). Yale denies any wrongful conduct.

Prior to joinder of issues on the parties' pleadings, Students for Fair Admissions, Inc. ("SFFA"), a nonprofit membership organization, filed a motion [Doc. 5] to intervene in the action as an additional party plaintiff, for the purpose of alleging that Yale's undergraduate admissions policy discriminates on the basis of race or ethnicity against Asian-American and White applicants, in violation of Title VI and the Fourteenth Amendment. SFFA's proposed Intervenor's Complaint [Doc. 5-2] alleges the existence of an unnamed member who is Asian-American, applied for admission to Yale's 2020 entering class, was discriminated against by Yale's admissions policies on the basis of race or ethnicity, and was "ready and able to apply to transfer to Yale" when it

1

stopped discriminating.   Doc. 5-2, ¶¶ 6-8.  The Intervenor's Complaint thereafter prays for declaratory and injunctive relief in general terms.

The Plaintiff government does not oppose SFFA's motion to intervene.  Defendant Yale does oppose it.  This contested motion was fully briefed, and argued by counsel at a hearing.  This Ruling decides the motion.

## I.

## Motion to Intervene

SFFA moves to intervene in the captioned action.  "[I]ntervention is the requisite method for a nonparty to become a party to a lawsuit."  *United States ex rel. Eisenstein v. City of New York,* 556 U.S. 928, 933 (2009) (citing *Marino v. Ortiz*, 484 U.S. 301, 304 (1988) (*per curiam*)).

Intervention is governed by Rule 24 of the Federal Rules of Civil Procedure.  Rule 24(a) provides for "Intervention of Right."  Rue 24(b) provides for "Permissive Intervention."  Each basis requires a district court order granting intervention.  The criteria are different.  SFFA asserts a claim for intervention as of right, and alternatively, moves for permission to intervene.  I consider these two bases for intervention in order.

## II.

## Intervention of Right, Fed. R. Civ. P. 24(a)

SFFA contends at the outset that Rule 24(a) gives it the right to intervene as plaintiff in the government's action against Yale.

Rule 24(a) provides in relevant part:

> On  timely motion, the court must permit anyone to intervene who:
> . . .
> (2) claims an interest relating to the property or transaction that is the

subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

The Second Circuit summarized these provisions in *In re Bank of New York Derivative Litigation*, 320 F.3d 291 (2d Cir. 2003):

> In order to intervene as a matter of right under Fed. R. Civ. P. 24(a)(2), an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action. Failure to satisfy *any one* of these requirements is a sufficient ground to deny the application.

320 F.3d at 300 (citations and internal quotation marks omitted; emphasis in original).  *See also Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 96 (2d Cir. 1990) ("Rule 24 (a)(2) provides a four part test for intervention as of right . . . . All four parts of the test must be satisfied to qualify for intervention as of right.") (citations omitted).

SFFA's motion to intervene in the government's action against Yale satisfies the first three of the four requirements.  First, SFFA's motion to intervene is timely; Yale does not suggest otherwise.  The case is in its earliest stages.  Yale has not yet responded to the government's complaint, by answer or motion.  SFFA has not delayed its intervention motion to the prejudice of anyone else.  Second, the interest SFFA claims is closely related to the subject of the government's action.  Again, Yale accepts that proposition, as well it might.  SFFA's proposed intervenor's complaint against Yale is for the most part copied *verbatim* from the government's complaint against Yale.  These two pleadings allege the same Yale admissions policies, violative of Title VI in the

same manner, to the detriment of the same Asian and White applicants.  Given these close similarities, Yale also, not surprisingly, does not dispute SFFA's satisfaction of the third requirement: that the Court's disposition of the government's action against Yale in a manner adverse to the government on the merits would in all likelihood "impair or impede" SFFA's assertion of identical claims against Yale.

Yale's opposition to SFFA's intervention of right is based instead upon the concluding provision in Rule 24(a)(2), which allows intervention of right to protect an intervenor's interest "unless existing parties adequately represent that interest."  To justify intervention as of right, SFFA must show that the government will not adequately represent the interest SFFA asserts against Yale. If SFFA fails  to make that showing  – if, that is to say, the government *will* adequately represent SFFA's interest  – then SFFA is not entitled to intervene of right as a party plaintiff in this action.

The Court must evaluate the adequacy of the government's representation of SFFA's interest against Yale.  The task requires a further consideration of the nature of the parties and the claims they assert.

### III.

### Adequacy of Representation

In its proposed intervenor's complaint, SFFA describes itself as a "voluntary membership organization formed for the purpose of defending human and civil rights secured by  law" through "litigation and other lawful means." Doc. 5-2, ¶ 4.  SFFA "promotes and protects the right of the public to be free from discrimination on the basis of race in higher-education admissions," and claims to be a membership group "of more than 20,000 students, parents, and others who believe that racial classifications and preferences in college admissions are unfair, unnecessary, and

4

unconstitutional." *Id.* ¶¶ 4-5.

In fulfillment of that self-proclaimed mission, the preamble to SFFA's proposed complaint recites that it seeks to obtain "declaratory and injunctive relief to remedy Yale University's racial discrimination in its administration of its undergraduate admissions program." *Id.* at 1. Count I of SFFA's complaint alleges that Yale violates Title VI "by employing an undergraduate admissions policy that intentionally discriminates against Asian-American and White applicants on the basis of race or ethnicity." *Id.* ¶ 206. Other counts in the complaint are of like substance. The complaint's prayer for relief seeks two declaratory judgments and two permanent injunctions, each addressed to Yale's admissions policies, procedures, and the manner in which it conducts admissions. *Id.* at 38 ("Prayer for Relief").

SFFA's proposed intervenor's complaint echoes the government's complaint against Yale, which initiated this action. The government's complaint alleges that for 50 years Yale "has intentionally subjected applicants to Yale College to discrimination on the grounds of race and national origin," with the result that "Yale's oversized, standardless, intentional use of race has subjected domestic, non-transfer applicants to Yale College to discrimination on the ground of race." Doc. 1, ¶ 2. The government further alleges that "Yale's race discrimination includes imposing undue and unlawful penalties on racially-disfavored applicants, including in particular most Asian, and White applicants." *Id.* ¶ 3. Moreover, "[b]ecause of Yale's race discrimination, Asian and White applicants have a significantly lower chance of admission to Yale College than do similarly-situated Black and Hispanic applicants." *Id.* ¶ 13. The prayer for relief in the government's complaint seeks a declaratory judgment and a permanent injunction, each addressed to Yale's admissions policies, procedures, and the manner in which it conducts admissions. *Id.* at 31 ("Prayer for Relief").

The question presented on SFFA's motion to intervene of right is whether the government's representation in litigation of its alleged interest against Yale will also adequately represent SFFA's interest against Yale. A side-by-side reading of the government's complaint and SFFA's proposed intervenor's complaint requires an affirmative conclusion. The claims and requested relief in these two pleadings are essentially the same. If the government succeeds on the merits of its Title VI claims against Yale, one would expect SFFA to succeed on its claims, by collateral estoppel if nothing else.

It is striking to note how often the Second Circuit is required, in the intervention context, to decide the issue of adequate representation of interests, as between existing parties and proposed intervenors. It frequently occurs that a nonparty, seeking to intervene in a case, asserts that the existing parties do not represent its interest. Existing parties, resisting intervention, proclaim that one of them represents the nonparty's interest "adequately" (the somewhat muted adjective used by the Rule).

The proposed intervenor bears the burden of showing that no existing party adequately represents its interest. *See, e.g., Washington Elec. Co-op.,* 922 F.2d at 98 ("VDPS has not shown that there will be inadequate representation of its rights unless it is allowed to intervene."); *United States v. City of New York*, 198 F.3d 360, 367 (2d Cir. 1999) ("The proponent of intervention must make a particularly strong showing of inadequacy in a case where the government is acting as *parens patriae*.") (citing *United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968, 985 (2d Cir. 1984)).

The Second Circuit in *Hooker* affirmed the district court's denial of motions by environmental organizations to intervene under Rule 24(a)(2) in an action brought by the United

States and New York State against the Hooker company for industrial pollution of the Niagara River. Judge Friendly's opinion says preliminarily: "Application of the Rule requires that its components be read not discretely, but together," since "the requirements of interest, impairment and inadequacy of representation are but three facets of the same problem."  749 F.2d at 983 (citation and internal quotation marks omitted).  To illustrate that principle:

> A showing that a very strong interest exists may warrant intervention upon a lesser showing of impairment or inadequacy of representation. Similarly, where representation is clearly inadequate, a lesser interest may suffice as a basis for granting intervention.

*Id*.

The district judge in *Hooker* "denied intervention on the basis of his finding that appellants failed to demonstrate that their interests may be inadequately represented by the existing parties," a conclusion "based to a large extent on the fact that the existing parties were governmental entities." *Id.* at 984.  That conclusion found favor with Judge Friendly:

> We agree with the district court that it is significant to the analysis required by Rule 24(a)(2) that the plaintiffs are governmental entities suing on behalf of their citizens. In such actions, the state or the United States presents itself in the attitude of *parens patriae*, trustee, guardian or representative of all her citizens.

*Id.* (citation and internal quotation marks omitted).  That concept resonates in the case at bar, where the United States commenced this action as party plaintiff against Yale.

Moreover, the concept has litigation consequences.  The Second Circuit held in *Hooker*:

> Whether or not it is particularly helpful to speak of a "presumption" of adequate representation by the sovereign in *parens patriae* litigation, we agree with the Third, Fifth and District of Columbia Circuits that, in litigation of this sort, a greater showing that representation is inadequate should be required.  It is not enough that the applicant would insist on more elaborate pre-trial or pre-

7

> settlement procedures or press for more drastic relief, particularly when the sovereign's interest is in securing preventive relief of the same general sort as the applicant. . . .
>
> . . .
>
> . . . [I]n an enforcement action by a governmental entity suing as a *parens patriae*, it is proper to require a strong showing of inadequate representation before permitting intervenors to disrupt the government's exclusive control over the course of its litigation.

*Id.* at 985, 987.

In reaching these conclusions, the Second Circuit in *Hooker* placed significant reliance on the District of Columbia Circuit's opinion in *Environmental Defense Fund v. Higginson*, 631 F.2d 738 (D.C.Cir. 1979), an action by environmental groups to compel federal officials to prepare an environmental impact statement relating to projects and operations in the Colorado River basin. The district court granted the applications of four states to intervene, but denied the applications of five water districts, on the ground that the local entities were adequately represented by the states in the states' capacities as *parens patriae*. The D.C. Circuit, affirming that denial, reasoned that under the *parens patriae* concept:

> a state that is a party to a suit involving a matter of sovereign interest is presumed to represent the interests of all its citizens. Thus, to intervene in a suit in district court in which a state is already a party, a citizen or subdivision of that state must overcome this presumption of adequate representation. A minimal showing that the representation may be inadequate is not sufficient. The applicant for intervention must demonstrate that its interest is in fact different from that of the state and that that interest will not be represented by the state.

631 F.2d at 740. Proposed intervenors cannot make that demonstration, *Higginson* holds, where "there appears to be no possible divergence between their position and the state's position on the primary issue," and the argument of the intervenors "would be merely cumulative." *Id.* In *Hooker*,

8

Judge Friendly's opinion cites and quotes with approval that language from *Higginson*. 749 F.2d at 984.

The Second Circuit's opinion in *Hooker,* 749 F.2d at 985, also cites and quotes *Wade v. Goldschmidt*, 673 F.2d 182 (7th Cir. 1982), where the Seventh Circuit said: "Even if we were to assume arguendo that applicants have a direct legally protectable interest, applicants have not overcome the presumption of adequacy of representation that arises when the proposed intervenor and a party to the suit (especially if it is the state) have *the same ultimate objective*." 673 F.2d at 186 n.7 (emphasis added). For that proposition, *Wade* cites the D.C. Circuit's opinion in *Higginson,* 631 F.2d at 760, and that of the Second Circuit in *United States Postal Service v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978).

In *Brennan*, the plaintiff United States Postal Service sued to enjoin the private defendants from running a mail delivery business which the Postal Service alleged violated postal statutes and regulations. Defendants rested their defense on the asserted unconstitutionality of the statutes. The National Association of Letter Carriers ("NALC"), a national labor union and the bargaining agent for 200,000 Postal Service employees, moved to intervene in the Postal Service's action. The Second Circuit, affirming the district court's ruling that the union was not entitled to intervene as of right, held that NALC "failed to show any inadequacy of representation" and "this failure is dispositive of this appeal." 579 F.2d at 191. The Second Circuit reasoned:

> The applicant must at least overcome the presumption of adequate representation that arises when it has *the same ultimate objective* as a party to the existing suit. The issue before the district court was strictly one of law[:] either the challenged statutes were constitutional or they were not. . . . Appellants did not contend that the United States Attorney's Office would not advance all of the appropriate legal arguments in favor of constitutionality. . . .

> . . . [W]e fail to see what NALC would have gained by intervening
> and superimposing a motion for a preliminary injunction upon the
> Postal Service's motion for summary judgment which was intended
> to secure *the same relief.*

*Id*. (citations omitted; emphasis added).

The more recent Second Circuit decisions adhere to these principles.  In *United States v. City of New York*, 198 F.3d 360 (2d Cir. 1999), a membership coalition of consumers of drinking water from the Croton watershed applied to intervene of right as a party defendant in an action brought by the United States against New York City to enforce the City's obligations under federal law to ensure the safety of the drinking water.  New York State had been allowed to intervene as a party plaintiff. The coalition's purpose in intervening as a party defendant "was to prevent any filtration of the Croton water supply."  198 F.3d at 363.  The district court denied the coalition's application to intervene.  The Second Circuit affirmed, reasoning in part:

> [T]o the extent that the proposed intervenors have remaining interests
> in the present litigation, any such interests can be adequately
> represented by the existing parties.  The proponent of intervention
> must make a particularly strong showing of inadequacy in a case
> where the government is acting as *parens patriae.  See Hooker
> Chems.*, 749 F.2d at 985. . . . The governmental parties to this
> litigation share appellants' concerns about safety and cost, and their
> representation is not inadequate simply because they have different
> ideas about how best to achieve those goals.  Thus, we cannot say that
> appellants' interests are not protected adequately by the parties to this
> action, as required by Rule 24.

*Id.* at 367 (citations, internal quotation marks, and brackets omitted).

In *Butler, Fitzgerald & Potter v. Sequa Corporation*, 250 F.3d 171 (2d Cir. 2001), a law firm that had represented GBJ Corporation, a party in protracted litigation, was discharged by that party, obtained a $2.9 million charging lien, and moved to intervene in the continuing litigation as a matter

of right on the theory that its lien would be extinguished absent a favorable disposition for its former client.  The district court denied the firm's motion to intervene.  The Second Circuit affirmed, holding: "It was not an abuse of discretion for the trial court to hold that Butler's interests were already adequately protected by GBJ, an existing party to the dispute, and to deny the motion to intervene on that basis."  250 F.3d at 179.  The court of appeals reasoned:

> [W]e have demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have *the same ultimate objective*.  Where there is an *identity of interest*, as here, the movant to intervene must rebut the presumption of adequate representation by the party already in the action. . . .
> . . .
>   We have not had occasion to lay down a hard-and-fast rule of what form of showing must be made to rebut a presumption of adequate representation when there is an identity of interest between the putative intervenor and an existing party to the action.  Although perhaps not an exhaustive list, we generally agree with the holdings of other courts that evidence of collusion, adversity of interest, nonfeasance, or incompetence may suffice to overcome the presumption of adequacy.

*Id.* at 179-80 (citations omitted and emphasis added).

## IV.

## Analysis

Having considered these Second Circuit opinions and the reasoning they express, I conclude without difficulty that SFFA fails to show that the United States, the existing party plaintiff and a classic embodiment of a *parens patriae*, does not adequately represent SFFA's interest in the case at bar.

Stated conversely, SFFA fails to rebut the presumption of adequate representation of its interest by the government.  That presumption arises because the government's complaint and

SFFA's proposed intervenor's complaint share an "identity of interest" and seek "the same ultimate objective."  The careful reader will note that the quoted phrases are taken from cited Second Circuit decisions denying applications to intervene as of right.

These likenesses, fatal under Second Circuit authority to SFFA's attempt to intervene of right, appear starkly from a comparison of the two pleadings' prayers for relief.  The United States' Complaint against Yale concludes with a prayer for:

> (a) A declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, from the Court that Yale's admissions policies and procedures violate Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*;

> (b) A permanent injunction prohibiting Yale from using race as a factor in future Yale College admissions decisions;

> (c) A damages award to the United States and injured applicants; and

> (d) All other relief as the interests of justice require.

Doc. 1, at 31.

SFFA's proposed Intervenor's Complaint concludes with a prayer for:

> (a) A declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, from the Court that Yale's admissions policies and procedures violate Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*;

> (b) A declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, from the Court that any use of race or ethnicity in the educational setting violates the Fourteenth Amendment and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*;

> (c) A permanent injunction prohibiting Yale from using race as a factor in future Yale College admissions decisions;

> (d) A permanent injunction requiring Yale to conduct all admissions

in a manner that does not permit those engaged in the decisional process to be aware of or learn the race or ethnicity of any applicant for admission;

(e) Attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable legal authority; and

(f) All other relief this Court finds appropriate and just.

Doc. 5-2, at 38.

I am unable to discern a material difference between these two prayers for relief. The Complaint and the Intervenor's Complaint each seek, in subparagraph (a), a declaratory judgment that "Yale's admissions policies and procedures" violate Title VI. While the Intervenor's Complaint's additional subparagraph (b), praying for a declaratory judgment that "any use of race or ethnicity in the educational setting" violates Title VI and the Fourteenth Amendment, specifies a manner in which Yale's "admissions policies and procedures" violates the Constitution and thus Title VI, the pleadings' declaratory prayers seek "the same ultimate objective": a declaration that Yale violates Title VI.

Similarly, the government's Complaint in subparagraph (b) seeks "a permanent injunction prohibiting Yale from using race as a factor in future Yale College admissions decisions," the same prayer that appears in subparagraph (c) of the Intervenor's Complaint. The Intervenor's Complaint adds subparagraph (d), seeking "a permanent injunction requiring Yale to conduct all admissions in a manner that does not permit those engaged in the decisional process to be aware of or learn the race or ethnicity of any applicant for admission." That is a particular injunctive application of the broadly stated injunction contained in the preceding subparagraph. The addition of subparagraph (d) to the Intervenor's Complaint does not disturb the "identity of interest" motivating these two pleadings,

which pursue "the same ultimate objective": condemnation and reformation of Yale's admissions policies and procedures.

During the hearing, I read to Mr. Norris, counsel who argued the case for SFFA, subparagraph (b) of the government's Complaint, which prays for "a permanent injunction prohibiting Yale from using race as a factor in future Yale college admission decisions," and asked counsel: "Isn't that what you are asking for, too?"  Doc. 44 (Hearing Transcript, Dec. 8, 2020) ("Tr.") at 27, l. 11-12.  Mr. Norris responded that the government's complaint against Yale "is lacking paragraph (d) of our prayer for relief," and argued:

> That's a different request that we make that the government does not. That request is not just to bar consideration of race by Yale, but to force Yale to adopt a race blind system.  It can't even see race on the applications.  It has to take that information out.  That's a different form of relief that we seek that the government does not.  That's aligned with our mission and our interest and one the [g]overnment doesn't share.

*Id.* l. 14-22.

Mr. Norris argued that SFFA's interests "are different because we have a narrow individual interest in our student member getting into Yale and we have a broader mission-based interest in ending all race based admissions in American universities."  *Id.* at  29, l. 6-10.  The narrow and particular interest of the United States is as "the funder.  The one who provides Title VI money and wants to see it's being spent appropriately.  Those interests are different."  *Id.* l. 12-14.  "Our interests are ending race-based admissions and vindicating the individual interest and rights of our standing member.  Those are not shared by the government."  *Id.* at 30, l. 4-7.

Mr. Norris's advocacy is energetic, but I am unable to accept his argument.  The argument is flawed because counsel's comparison of the litigation interests of the government and SFFA

misconstrues the nature of the government's claim against Yale and the injunctive relief the government seeks.

Contrary to SFFA's conception, the government's litigation objective is not narrowly limited to recouping "Title VI money" from an unworthy recipient, thereby leaving it to an entity like SFFA to protect the broader interests of applicants to Yale. The government's Complaint alleges in broad language that for 50 years, Yale "has intentionally subjected applicants to Yale College to discrimination on the grounds of race and national origin," Doc. 1, ¶ 2, and recites that "the United States seeks declaratory, injunctive, and damages relief to remedy Yale's discriminatory conduct and to protect the civil rights of all applicants to Yale College," *id.* ¶ 15. That is the functional equivalent, stated slightly differently, of the anti-racial discrimination mission SFFA proclaims as its own and pleads in the Intervenor's Complaint, Doc. 5-2. Subparagraph (b) of the government's prayer for relief recites the injunctive relief the government's Complaint seeks, and it is plain beyond cavil that if the Court granted the government that injunction, it would also prohibit Yale from indulging in the admissions policies and practices SFFA complains of in its Intervenor's Complaint. It is no coincidence that the authors of the Intervenor's Complaint pay the authors of the government's Complaint that sincerest form of flattery: copying significant portions of the government's descriptions of Yale's admissions procedures.

The case will come down to the decisive issue before this Court: either Yale's admissions policies and procedures violate Title VI, or they do not. The United States and SFFA have "the same ultimate objective": a ruling by the Court that Yale violates Title VI. The United States and SFFA seek the same injunctive relief: prohibiting Yale from using race as a factor in Yale College admissions decisions. The Second Circuit cases cited *supra* hold that in such actions, where an

existing party and a proposed intervenor have the same ultimate objective, there is a presumption that the existing party adequately represents the similar interests of the putative intervenor.  SFFA, applying to intervene as of right, bears the burden of rebutting that presumption.  It fails to do so.

The case at bar closely resembles *United States Postal Service v. Brennan*, 579 F.2d 188 (2d Cir. 1978), where a party (the Postal Service) and a proposed intervenor (a labor union) shared the ultimate objective of upholding the constitutionality of relevant statutes.  The Second Circuit, affirming the district court's denial of the union's application to intervene, noted that "[t]he issue before the district court was strictly one of law[:] either the challenged statutes were constitutional or they were not," and observed: "Appellants did not contend that the United States Attorney's Office [for this District] would not advance all of the appropriate legal arguments in favor of constitutionality."  579 F.2d at 191.  By the same token, in the present case the SFFA does not contend that the able attorneys in the Civil Right Division of the Department of Justice in Washington, aided by the United States Attorney's Office for this District, will not advance a full panoply of arguments in support of the broadly worded, comprehensively stated allegations of discrimination the government pleads in its Complaint against Yale.  The Second Circuit's denial of intervention of right in *Brennan* is compelling authority for the same rejection of SFFA's application in the case at bar.  Intervention of right is not available to SFFA because the government, in pressing its Complaint against Yale, adequately protects and represents the interests SFFA identifies in its proposed Intervenor's Complaint.

The other Second Circuit cases cited and quoted *supra* are to the same effect.  *See, e.g., Washington Elec. Co-op.*, 922 F.2d at 98 ("Where there is an identity of interest between a putative intervenor and a party, adequate representation is assured.").  Nor does SFFA's inclusion of

16

subparagraph (d) in its prayer for relief render inadequate the government's protection of SFFA's basic litigation objective.   While counsel for SFFA argued that the injunction requested in subparagraph (d) will "force Yale to adopt a race blind system," a "different form of relief" that "the government does not" seek, Tr. at 17, l. 17-21, the broadly stated injunction the government seeks in subparagraph (b) of its prayer may without difficulty be read to include what SFFA includes in its subparagaph (d).  But assume, contrary to that sensible reading of the government's subparagraph (b), that SFFA's subparagraph (d) contains an injunction different in nature and effect than what the government prays for in its subparagraph (b): within the context of intervention, that difference does not render the government's representation of SFFA's interest inadequate.

In *Hooker*, where the Second Circuit considered "adequate representation by the sovereign in *parens patriae* litigation," Judge Friendly's opinion holds that "a greater showing that representation is inadequate should be required" from an applicant for intervention, and adds: "[i]t is not enough that the applicant would insist on more elaborate pre-trial or pre-settlement procedures or press for more drastic relief, particularly when the sovereign's interest is in securing preventive relief *of the same general sort as the applicant*."  749 F.2d at 985 (emphasis added).  Judge Friendly might have been writing with the case at bar in mind.  The most that can be said for SFFA's subparagraph (d) is that it seeks a somewhat different (though scarcely "drastic") relief from that sought by the government, but the interests in securing preventive relief the government and SFFA have are clearly "of the same general sort", *viz*, obtaining an injunction which prohibits Yale from using race as a factor in Yale College admissions decisions.

In order that there be no doubt about the point, Judge Friendly in *Hooker* went on to quote approvingly the D.C. Circuit's opinion in *Higginson*, that in a *parens patriae* case "[t]he applicant

for intervention must demonstrate that its interest is in fact different from that of the state and that that interest will not be represented by the state." *Id.* (quoting *Higginson*, 631 F.2d at 740). SFFA does not attempt to make that showing with respect to its claims against Yale, nor could it, since SFFA's claims mirror those of the government.

The cited line of Second Circuit decisions beginning with *Hooker* require that SFFA's motion to intervene in this case as of right under Rule 24(a) must be DENIED, because SFFA's interests in the case are adequately protected and represented by the United States, the party plaintiff in the existing action.[1]

## V.

### Permissive Intervention, Fed. R. Civ. P. 24(b)

If the requirements of Rule 24(a) are satisfied, "the court *must* permit anyone to intervene" as of right. Fed. R. Civ. P. 24(a) (emphasis added). The alternative remedy of "permissive intervention," which SFFA invokes, is conferred by Rule 24(b), which provides in relevant part that "the court *may* permit anyone to intervene" who "has a claim or defense that shares with the main action a common question of law or fact." *Id.* 24(b)(1)(B) (emphasis added).

"Permissive intervention is wholly discretionary with the trial court." *Brennan*, 579 F.2d at 191. "The court considers substantially the same factors whether the claim for intervention is 'of

---

[1] In *Brennan,* the Second Circuit said: "Determination of the adequacy of existing representation necessarily involves an assessment of factors which are within the discretion of the district court." 579 F.2d at 191 (citations omitted). In *City of New York*, the Second Circuit held "we cannot say that appellants' interests are 'not protected adequately by the parties' to th[is] action,' as required by Rule 24," and concluded "the district court did not abuse its discretion in denying the Coalition's motion to intervene as of right." 198 F.3d at 367 (citing Fed. R. Civ. P. 24(a)). Thus empowered, I exercise my discretion in denying SFFA's motion to intervene as of right.

right' under Rule 24(a)(2), or 'permissive' under Rule 24(b)(2)." *R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006) (citation omitted). For a district court deciding whether to grant permissive intervention, "[t]he principal consideration set forth in the Rule is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *Brennan*, 579 F.2d at 191 (paraphrasing Fed. R. Civ. P. 24(b)(3) and citing 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1913 ("Discretion of Court") (3d ed.1977)). "The trial court's discretion is very broad; indeed, we have not found a single case in which a denial of permissive intervention under Rule 24(b) was reversed solely for an abuse of discretion." 579 F.2d at 192. "Because permissive intervention is (by definition) never mandatory, . . . reversal of a district court's denial of permissive intervention is a very rare bird indeed." *In re Bank of New York Derivative Litig.,* 320 F.3d 291, 300 n.5 (2d Cir. 2003) (citation, internal quotation marks, and bracket omitted).

## VI.

## Analysis

In the case at bar, it is apparent that permitting SFFA to intervene in the government's action against Yale would increase and complicate pre-trial discovery and related issues. Mr. Norris acknowledged as much during the hearing. He said:

> If we get to participate in this case, we will seek discovery along with the United States, but the same would be true if we filed our own case. We believe it is more efficient for us to pursue that discovery with everyone else in one lawsuit instead of on a parallel track in two lawsuits.
>
> . . .
>
> . . . We litigated a very similar case against Harvard University. There was extensive discovery in that case. I would say in that respect, there would be extensive discovery if we filed our own

> lawsuit against Yale, which we have the right to do. . . .
>
> . . .
>
> . . . Yale instead says it thinks we won't file our own lawsuit, but that
> is our plan if this more efficient route is denied.

Tr. at 12, l. 16-21; *id.* at 13, l. 6-10; *id.* at 18, l. 6-8.   SFFA thus contemplates conducting its own

"extensive discovery," either as an intervenor in this action, or as the plaintiff in a subsequently filed

separate action against Yale for the same relief.

Yale professes not to fear a separate action; Mr. Katyal, Yale's counsel at the hearing,

undertook to advise SFFA:

> You have your own separate action.  Go litigate your separate lawsuit.
>
> But unless you can claim any sort of bias from the other lawsuit,
> that's the way to proceed.  Not to open the door to intervention to
> allow other folks to come in. . . .
>
> . . .
>
> If they want to bring their own separate case, that's their latest
> position, absolutely bring it.  We'll defend it.  We'll go through
> discovery.

*Id.* at 43, l. 14-20; *id.* at 48, l. 17-19.

Yale's counsel cautioned against intervention as creating the risk of "pile on plaintiffs"

capable of "jumping in and intervening whenever you want to say something at a key moment," and

regarded it as preferable to "force someone like SFFA to file their own lawsuit, show their own

standing, get their own discovery, do all of that stuff." *Id.* at 45, l. 4, 8-9, 12-14.[2]  Mr. Katyal

expressed the view that instead of intervention, "having separate cases is actually better than having

them all mushed together where everything has to be hashed out where everyone has a kind of equal

---

[2]   "All of that stuff" is not a phrase found in *Black's Law Dictionary.*  I understand counsel
to refer to the protracted and contentious litigation experiences that experienced trial lawyers inflict
upon each other.

vote." *Id.* at 47, l. 2-5. He identified a particular manner in which SFFA's intervention would delay resolution of the government's action against Yale:

> If SFFA intervened, then we would have to get into a real dispute about what they can see, how much they see, how fast it can be produced and the like because they do not have the same discovery benefits as the United States Government.   They represent a whopping one person.  The Government represents everyone and so we wouldn't necessarily be turning over all of that.  So you would be deciding all of those discovery disputes and in the context of this Justice Department case which would then be slowed down.

*Id.* l. 12-21.

That is a legitimate concern for Yale, as the defendant, to express, notwithstanding that the plaintiff government does not oppose SFFA's intervention.  Defense counsel asserted: "Yale firmly believes in its admissions policy.  It wants its day in court and doesn't want to be delayed by waiting for SFFA's discovery and the like." *Id.* at 48, l. 2-5.  "The like" could include disputes about the standing of the individual applicant to Yale, whose existence is specifically alleged in SFFA's proposed Intervenor's Complaint.

I think these concerns are well founded.  Moreover, there is a public interest in obtaining a prompt judicial determination (after appeals, if any) of the legality of Yale's current admissions policies and procedures.   Allowing SFFA to intervene on behalf of one individual in the government's action would in all likelihood "delay the adjudication of the original parties' rights," a negative factor Rule 24(b)(3) specifically commands the district court to consider "in exercising its discretion" to allow permissive intervention.  Fed. R. Civ. P. 24(b)(3).

SFFA contends that the filing of separate cases would lead to duplicative and potentially inconsistent rulings in the governance of the cases. For this reason, intervention is touted for the sake

of efficiency.  The perceived difficulties are illusory.  If SFFA, true to its stated intent, files a separate action against Yale on the same grounds the government alleges in the case at bar, the two cases will be regarded as related under the Court's assignment rules, and the second action will be assigned to the same trial judge.  Where actions before the same trial court "involve a common question of law or fact," Rule 42(a) gives the trial judge broad discretion to "join for hearing or trial any or all matters at issue in the actions," Fed. R. Civ. P. 42(a)(1); "consolidate the actions," *id.* 42(a)(2); or "issue any other orders to avoid unnecessary cost or delay," *id.* 42(a)(3).  In this case, the trial judge would make full use of those inclusive discretionary powers.  I can make that prediction with some  confidence, because I am the trial judge.

In the case at bar, and in the exercise of my discretion, I deny SFFA's alternative motion under Rule 24(b) for permissive intervention.

## VII.

## Amicus Curiae Option

Yale contends on this motion that SFFA, denied intervention, should be content with arguing its interests in this case as an amicus curiae.

This concept prompts an entertaining contrast with the earlier litigation involving Harvard. The SFFA appeared as party plaintiff in that action, which challenged Harvard's admissions policies and procedures on the same bases now asserted against Yale.[3]  The United States appeared in the

---

[3]  The *Yale Daily News*, in its October 8, 2020 issue, reporting on the filing of the Justice Department's suit against Yale, said that Adam Mortara, "the lead trial counsel for Students for Fair Admissions in the high-profile lawsuit against Harvard University, told the *News* that reading the DOJ's Thursday lawsuit against Yale gave him 'extreme deja vu.'  He said that the facts of the case, as well as Yale's admission practices outlined in the complaint, are 'virtually identical' to the Harvard case." Davidson, Amelia. "Justice Department sues Yale over alleged discrimination in admissions." *Yale Daily News,* Oct. 8, 2020.

Harvard case as one of several amici curiae in support of SFFA . In this case – the Yale case – there is a role reversal: the United States is the party plaintiff and, Yale suggests, SFFA should play the part of supportive amicus.

As I noted in Part VI, SFFA rejects the notion of participating in the case at bar as an amicus curiae. Mr. Norris said at the hearing: "That's a big difference from an amicus who can merely file briefs and make legal arguments, can't participate in discovery, get any relief or raise any claims. I think that's a far cry from something that could resolve our concerns here." Tr. at 20, l. 2-6. SFFA is determined to participate in discovery, get relief, raise claims, "all of that stuff;" and to do so it must intervene in this case, or file a separate case if the Court denies intervention. SFFA is entitled to act on that determination and decline the part of an amicus curiae. In this world, friendship cannot be compelled. Judges frequently welcome the contributions of an able and articulate amicus, but they cannot order anyone to undertake that beneficent role, and I do not do so in this case.

## VIII.

### Conclusion

For the foregoing reasons, the motion of Students for Fair Admissions, Inc. to intervene as plaintiff in this action [Doc. 5] is IN ALL RESPECTS DENIED.

It is SO ORDERED.

Dated:   New Haven, Connecticut
         January 19, 2021


                                        */s/Charles S. Haight, Jr.*
                                        CHARLES S. HAIGHT, JR.
                                        Senior United States District Judge